**James Edward LEWIS, Appellant,**

**v.**

**Ashley A. ADERHOLDT and Washington Terminal Company, a corporation, Appellees.**

No. 3460.

District of Columbia Court of Appeals.

Argued July 6, 1964.

Decided Oct. 14, 1964.

Rehearing Denied Nov. 3, 1964.

---

Philip Shinberg, Washington, D. C., with whom Daniel Y. Sachs was on the brief, for appellant.

Hubert B. Pair, Asst. Corporation Counsel, with whom Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Richard W. Barton, Asst. Corporation Counsel, were on the brief for appellee Ashley A. Aderholdt.

Stephen A. Trimble, Washington, D. C., with whom Thomas A. Flannery, Washington, D. C., was on the brief, for appellee Washington Terminal Co.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Ashley A. Aderholdt, Property Clerk of the Metropolitan Police Department, received certain money in cash from the Washington Terminal Company representing the contents of a locker at Union Station which was suspected of being the proceeds of a crime. Appellant asserted ownership of these funds and demanded their return to him. After refusal by Aderholdt to turn over the money to him, appellant instituted an action in detinue against both the Property Clerk and the Terminal Company.

Trial resulted in judgments in favor of both defendants. This appeal ensued.[1]

On March 12, 1962, appellant placed a paper bag containing about $2,500 in cash and a Catholic missal in a self-operating locker, No. 1294, at Union Station. Later that same day he withdrew over $300, using $188 as payment on a furniture account and purchasing a television set and making a deposit on a telephone. On March 14, 1962, an employee of the Terminal Company, in accordance with standard procedures, opened all coin-operated lockers at Union Station which had been in use in excess of 24 hours and for which the required additional deposit for extended use had not been made. One of the lockers opened for overtime storage was No. 1294. Its contents, the bag with the cash and the missal, were removed to the baggage room and a claim check placed in the locker. Due to the exceptionally large amount of cash found in the paper bag, the Terminal Police notified the Metropolitan Police Department of its presence. On March 16, 1962, upon opening locker No. 1294 with his key, appellant found the claim check therein which he presented at the baggage room. By prearranged plan, the police were notified and appellant was interrogated about the contents of the locker and any knowledge he might have of a burglary which had taken place between 7 p. m. on March 11, 1962, and 7 a. m. on March 12, 1962, at a local drug store where appellant had worked as a porter and delivery truck driver for several months prior to mid-February, 1962, when he was discharged because suspected of stealing. Missing in the burglary from the safe were a brown paper bag containing more than $3,000 and a Catholic missal. Police had determined that the burglary was an "inside job," entry to the store having been obtained by a key to the door and the safe opened with the combination thereto.

Appellant denied any knowledge of or participation in the drug store burglary. He testified he had taken the missal from his mother's house and that the money represented his savings over a period of years prior to his imprisonment on a housebreaking conviction on December 26, 1957, and after his release on June 9, 1961. He stated that while in prison the money was secreted in the inside pocket of a coat hanging in a closet in his mother's house. After his release, he continued to hide the money there until his marriage, when he secreted it in a closet in his own apartment. Neither his mother nor his wife nor anyone else knew he had the money. Appellant testified he removed the money to the locker at Union Station because his wife was about to clean the closet and he was afraid she would discover it.

The trial judge ruled that appellant had failed to establish his ownership of the money or his lawful possession thereof prior to the time the money was delivered to the Property Clerk.

Appellant contends, *inter alia*, that there was error in granting judgment for the Terminal Company, in admitting evidence relating to the drug store robbery, objected to as irrelevant, and in placing the burden upon him to present satisfactory evidence of ownership of the money. He argues that the Terminal Company was a bailee and under absolute duty to deliver the money in question to him upon his demand.

■■■ We consider first appellant's alleged right to recover the money from the Terminal Company by reason of a bailor-bailee relationship. The creation of a bailment requires that possession and control over the property pass from the bailor to the bailee. *1420 Park Road Parking Inc.*,

1. Upon a prior appeal of this case (187 A.2d 488 (1963)) from a summary judgment against the property clerk, ordering the return of the money, we reversed, holding that the record raised substantial doubt as to legal ownership of the money in question and that summary judgment is not in order where there is the slightest doubt as to a factual issue.

v. Consolidated Mut. Ins. Co., D.C.Mun. App., 168 A.2d 900, 901 (1961). Here no physical delivery of the paper bag and its contents was made by appellant to any agent of the Terminal Company.[2] The transaction was simply the lease of locker space for a limited period upon a self-operating basis. Although the company had access in order to remove property in the event the locker had been in use for more than 24 hours without payment of additional charges, this did not operate to negate the primary control afforded appellant. Marsh v. American Locker Co., 7 N.J.Super. 81, 72 A.2d 343, 345, 199 A.L.R.2d 326 (1950). Proof of delivery to the bailee is essential. We are satisfied that in the instant case there was no delivery of the property to the Terminal Company and consequently no bailment was created when appellant merely paid the initial fee for the first 24 hours' use of the locker and placed the property therein. Under the circumstances, the trial court properly ruled that without a bailor-bailee relationship, there was no liability upon the Terminal Company for its failure to deliver the property or its equivalent.

In respect to the claim of a wrongful detention of the property, as alleged in appellant's complaint, there is no evidentiary showing in the record of a wrongful detention on the part of either the Terminal Company or of the Property Clerk in the performance of his official duties. The Terminal Police, appointed by the District of Columbia Commissioners by virtue of D.C. Code,[3] were obligated under Metropolitan Police Department Regulations[4] to notify the regular police when they became suspicious upon finding such a large sum of money deposited in the locker at Union Station; and the Metropolitan Police Department had authority to take the money into its custody when there was just cause to suspect it had been stolen.[5] Once the property was placed in the possession of the Property Clerk, he was not obligated to turn it over to a claimant until "satisfactory evidence of the ownership of property or money" had been submitted. 4 D.C. Code § 156(a). The trial judge found that the circumstances were sufficient to excuse the Terminal Company for its failure to deliver the property to appellant upon his presentation of the claim check and to justify the detention of the property by the Property Clerk. These were questions of fact for determination by the trial judge. Star Pontiac Company v. Eastern Insurance Company, D.C.Mun.App., 184 A.2d 200, 202 (1962). Where such factual determinations are supported by competent evidence in the record, we are without power to disturb them. Gagnon v. Wright, D.C.App., 200 A.2d 196, 199 (1964). We conclude that the trial judge's findings on the wrongful detention claims were proper.

We find no error in the admission of evidence concerning the drug store burglary.

---

2. Cf. O'Brien v. Pennsylvania Railroad Company, 184 F.Supp. 305 (S.D. New York 1960), where an agent for a railroad accepted baggage to be checked in the parcel room for a nominal fee.

3. 4 D.C.Code § 115: "The Commissioners of the District of Columbia * * * may appoint special policemen for duty in connection with the property of, or under the charge of, such corporation or individual; said special policemen * * * to be subject to such general regulations as the said commissioners may prescribe."

4. Manual of the Metropolitan Police Department, Ch. XXXII, § 4, provides: "Special policemen * * * shall be amenable to the rules laid down for the government of the Metropolitan police force insofar as such rules are applicable." One of the rules laid down for the government of the Metropolitan Police directs that "The major and superintendent of police and the lieutenants of police, having just cause to suspect that any felony has been * * * committed * * * may take charge of all property which he or they shall have then and there just cause to suspect has been stolen." 4 D.C.Code § 141.

5. 4 D.C.Code § 141, supra, note 4.

On the contrary, this evidence was relevant and material to the determination of whether there was probable cause for suspecting that the money in the locker was connected with the crime. It was also relevant to show justification for failure of the Terminal Company to return the contents of the locker to appellant.

Appellant contends that the Property Clerk erroneously imposed upon him the burden of presenting satisfactory evidence of ownership at the time of his demand. As stated above, the Property Clerk was not obligated to turn over property in his custody to a claimant until the latter presented "satisfactory evidence of the ownership of the property or money." Therefore, the Property Clerk had a right to require this type of proof from him and, in its absence, to refuse his demand for the property.

Finally, appellant contends it was error to have imposed upon him at trial the burden of producing satisfactory evidence of ownership of the contents of the paper bag found in the locker under the circumstances related. The determination of the Property Clerk adverse to appellant's claim did not have the force and effect of a judgment. Carroll v. E. Heidenheimer, Inc., D.C.Mun.App., 44 A.2d 71, 72 (1945). We are here reviewing the record from the trial court for any error arising from a trial *de novo* of appellant's claim to the property held by the Property Clerk. As appellant in this *de novo* proceeding was seeking affirmative relief, he had the burden of proving ownership by a preponderance of the evidence. After a hearing the trial judge found that the testimony of appellant was implausible and failed to establish his claim to the property. The record amply substantiates that there is nothing to compel a finding that appellant is the owner and to require a reversal of the trial court's judicial determination against his claim to title.[6]

Other allegations of error have been considered and are without merit. Accordingly, we rule that the trial findings for appellees were properly made from competent evidence, and judgments in their favor are

Affirmed.

6. Cf. Kronick v. Sullivan, D.C.Mun.App., 83 A.2d 518, 519 (1951).