Howard Jay SILVERSTONE and Leila Ryland Swain, Petitioners,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,

Maude Atherton et al., Intervenors.

No. 8827.

District of Columbia Court of Appeals.

Argued Nov. 6, 1975.

Decided April 25, 1977.

Whayne S. Quin, Washington, D.C., with whom Norman M. Glasgow, John F. McCabe, Jr., and Glenn D. Simpson, Washington, D.C., were on the brief, for original petitioner.

Norman M. Glasgow, Whayne S. Quin, John F. McCabe, Jr., and Iverson O. Mitchell, III, Washington, D.C., were on the supplemental memorandum for substitute petitioners.

James N. Dulcan, Asst. Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, Washington, D.C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, Richard W. Barton and S. Perry Jones, Asst. Corp. Counsel, Washington, D.C., were on the supplemental memorandum for respondent.

William H. Greer, Jr., Washington, D.C., for intervenors.

Before NEBEKER and HARRIS, Associate Judges, and JOHNSON, Associate Judge, Superior Court of the District of Columbia.[*]

NEBEKER, Associate Judge:

Petitioners seek review of an order of the District of Columbia Board of Zoning Adjustment (the Board) upholding an order of the Zoning Administrator which terminated a nonconforming use and denied an alternative request for a variance permitting a nonconforming use. On or about August 20, 1976, and subsequent to oral argument in this court, the original petitioner, Eleanor Ahrens, sold the subject property to Howard Silverstone and Leila Swain. On November 9, 1976, the new owners, pursuant to D.C.App.R. 43, moved to substitute themselves for Eleanor Ahrens as petitioners in this case. This motion was subsequently granted over opposition by the Board. The principal issues raised by petitioners are: (1) whether the Board failed to make the required findings and conclusions regarding abandonment of a nonconforming use; (2) whether the Board's finding of an abandonment of a nonconforming use was supported by substantial evidence; and (3) whether the evidence was sufficient to support the termination of flat use (use as a two-family dwelling, see Zoning Regulations of the District of Columbia, § 1202 (1973 reprint)) and the denial of a variance.

In reviewing the record in this case, we noted that the "Opponents' [Intervenors] Proposed Findings of Fact and Conclusions of Law" raised the point that a right to a nonconforming use never attached to the subject premises. If such a conclusion were correct, it would not be necessary to treat petitioners' argument with regard to abandonment of a nonconforming use. Accordingly, on December 23, 1976, we sua sponte directed the parties to file supplemental memoranda addressed to when, if at all, a nonconforming use right attached to the subject premises and the effect of such a legal conclusion on the instant proceedings.

■ We conclude that the Board's order is based on a clearly erroneous interpretation of the regulations as to when use of the property became nonconforming. Although we find that the Board's rationale for its decision was erroneous, we hold the result reached to be mandated by other regulations in light of the Board's findings which have adequate support in the record. As stated in *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943):

[I]n reviewing the decision of a lower court, it must be affirmed if the result is

* Sitting by designation pursuant to D.C. Code 1973, § 11–707(a).

correct "although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238 [58 S.Ct. 154, 82 L.Ed. 224 (1937)]. The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. . . . Like considerations govern review of administrative orders.

. . .

Our rationale for agreeing with the result reached by the Board does not involve determinations of policy or judgment which are exclusively entrusted to the administrative agency, but rather a determination of law reviewable by an appellate court. We are not relying on an alternative basis to sustain Board action on facts reflected in the record, but not specifically relied upon, as we might do with a trial judge when other evidence of record supports a different theory. Rather, we review the findings made for articulated adequacy and evidentiary support and find them to be unassailable when applied to substantive law about which the Board has no flexibility as to policy, expertise, or discretion. Accordingly, we affirm the order of the Board.

### I.

The original petitioner purchased the property in August 1973. At the time of this purchase, the property was being used as a flat. The seller was renting the basement as a separate unit and the sales contract included a provision effectuating an orderly transition for the rental unit.

After occupying the structure, the original petitioner decided to make some alterations for convenience purposes, but intended to continue use of the premises as a flat. Application to the inspector of buildings to permit the alterations resulted in an order by the Zoning Administrator, calling on the applicant to terminate the flat use, an affirmance by the Board of the termination order, and the denial by the Board of a variance permitting flat use.

The structure was erected as a flat in 1903. It has three floors, each with a separate entrance. Zoning laws were introduced in the District of Columbia in 1920 and the property was zoned 40–B, which permitted flats as a matter of right. *See* Zoning Regulations of the District of Columbia, §§ III, XVI (1920). In 1924, the property was rezoned 40–B Restricted Residential, which prohibited the construction of new buildings intended for flat use, but permitted such use in existing flats and the conversion to flat use of existing buildings so long as no enlargement of the structures was necessitated by such a conversion. *See* Zoning Regulations of the District of Columbia, §§ VII, XVI (1924). The premises were used as a flat until 1950. In the early 1950's, the then-owner, a Colonel Johnson, capped off the utilities in the second-floor kitchen and removed various culinary appliances. He used the property as a single-family dwelling until he sold it in 1964. In 1958, while Colonel Johnson was still residing on the premises, the property was rezoned R–3, which prohibited flat use. *See* Zoning Regulations of the District of Columbia, §§ 3103.1 *et seq.* (1958).

■ Petitioners question the adequacy of the Board's finding that the nonconforming use of the premises had been abandoned. Petitioners' argument and the Board's ruling both necessarily assume that flat use of the premises became a nonconforming use with the enactment of the Zoning Regulations of 1924. The legal conclusion by the Board that the use of the premises thereby became nonconforming is embraced in the Board's finding of fact No. 7. The issue of abandonment of a nonconforming use necessarily presupposed an initial determination of nonconformity. Therefore, it is essential to determine whether the Board correctly found a nonconforming use of the premises. We recognize that an interpretation by the Board of Zoning Regulations may not be set aside unless clearly erroneous or inconsistent with the Zoning Regulations. *See Rose Lees Hardy Home & School Association v. District of Columbia*

*Board of Zoning Adjustment,* D.C.App., 343 A.2d 564 (1975). *See also Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). For the reasons which follow, we conclude that the Board's finding of a nonconforming use of the premises as of 1924 is clearly erroneous, although nonprejudicial to petitioners.

■ The Board's finding that flat use of the premises became nonconforming is based on a 1924 amendment to the Zoning Regulations which states in relevant part:

Section XVI(a), change definition of "B Restricted" to read as follows:

In the "B Restricted" area district the minimum dimension of yards and courts, and maximum percentage of lot occupancy, shall be the same as for "B" area district, except that hereafter no building shall be erected for use as an apartment house or a flat or a hotel, nor shall any existing building be enlarged for use as an apartment house, a flat or a hotel, nor shall any building hereafter erected be used for these purposes.

This amendment, in our view, does not make flat use a nonconforming use for several reasons. First, the amendment addressed itself to "area district[s]". It was more concerned with spatial problems than with use considerations. A "B Restricted" area district did not become a use district until the June 30, 1936, amendments to the Zoning Regulations. Second, the amendment does not prohibit flat use per se, but only the construction of new structures for flat use and the enlargement of existing structures for flat use. The amendment leaves undisturbed the continued use of existing flats and the conversion to flat use of existing buildings, so long as no enlargement of the structure is necessitated for such a conversion. Finally, nothing in the amendment prohibited a reinstitution of flat use on premises where flat use had been abandoned. Therefore, the concept of abandonment which is part and parcel of the theory of nonconforming uses is inapplicable under the 1924 amendment. It necessarily follows that flat use was not a nonconforming use under the amendment.

Thus, flat use was a permitted use subsequent to the 1924 amendment and not a nonconforming use. A nonconforming use is an existing use which is contrary to the Zoning Regulations and, therefore, a permitted use is not a nonconforming use. *See Melody v. Zoning Board of Appeals of Town of Glastonbury,* 158 Conn. 516, 264 A.2d 572, 574 (1969); *Saunders County v. Moore,* 182 Neb. 377, 155 N.W.2d 317, 319 (1967). *See also* Zoning Regulations of the District of Columbia, § 1202 (1958), which defines a nonconforming use as

any use of a *building, structure,* or of land, lawfully existing at the time these regulations become effective, which does not conform to the use provisions of these regulations for the *district* in which such use is located.

■ Flat use in an R–3 district first became a nonconforming use in 1958 with the adoption of § 3103.2 of the Zoning Regulations, which states:

Except as provided in Chapter 7 of these regulations, in an R–3 District no *building* or premises shall be used and no *building* shall be erected or altered which is arranged, intended, or designed to be used except for one or more of the uses listed in the following paragraphs.

Flat use is not one of the uses enumerated.

The premises were not being used as a flat in 1958, but rather as a one-family residence. Admittedly, the premises were built for flat use and were used as such continually until 1950. Whether subsequent to 1950 such flat use was abandoned or whether flat use continued as an accrued, although inchoate, right need not be decided. Either status of the property leads to the conclusion that reconversion to flat use subsequent to 1958 was impermissible. If flat use was abandoned in 1950, reconversion to flat use subsequent to 1964 was contrary to the Zoning Regulations. On the other hand, if the right to flat use continued, and this accrued right became nonconforming because of the 1958 Zoning Regulations, § 7104.3 of the regulations prevented subsequent reconversion of the premises to actual flat use.

When an existing *nonconforming* use has been changed to a conforming or more restrictive use, it shall not be changed back to a *nonconforming use* or less restrictive use. [*Id.*]

"Changed" in the context of the above regulation is not synonymous with "abandoned", as urged by petitioners, and, therefore, an abandonment need not be found to have occurred in order to trigger this provision. *Brown v. Gerhardt*, 5 Ill.2d 106, 125 N.E.2d 53 (1955), cited by petitioners in support of their contention is inapposite. In *Brown*, the court was construing a statute similar to § 7104.3 and found the word "changed" to be "almost synonymous" with "abandoned". However, that statute addressed only prospective changes in nonconforming uses. Section 7104.3 however, addresses changes which have already occurred. In the context of § 7104.3, substituting "abandoned" for "changed" would make the regulation meaningless. A nonconforming use, if it has been abandoned, can in no sense be deemed to be "existing". However, property on which a nonconforming use has been "changed" in fact to a conforming use can still be considered to have attached to it an inchoate right to the nonconforming use. *See Appeal of Haller Baking Co.*, 295 Pa. 257, 145 A. 77, 79 (1928). As such, the statute necessarily distinguishes rather than equates "change" and "abandonment". Moreover, according to § 7102.1 of the Zoning Regulations, a nonconforming use may only be maintained or continued if the actual use of the premises remains nonconforming. As noted, the actual use in 1958 was as a conforming single-family residence.

We find no problem of retroactivity in applying §§ 7104.3 and 7102.1 to this case. Flat use as a nonconforming use right vested in the premises only as of 1958; these sections of the Zoning Regulations attached contemporaneously with the creation of this right as a limitation thereon. The sections are aimed at resolving the status of property to which a right to a nonconforming use attached by virtue of the 1958 regulations, although actual use of the property at the time of the adoption of the regulations was conforming. These sections operate, in effect, to lower the threshold at which the right to a nonconforming use may be lost. Nonconforming uses which are merely changed to conforming uses, even absent abandonment, may no longer be reinstituted. Our interpretation of the Zoning Regulations is consistent with its purposes as set out in § 7101.1:

It is necessary and consistent with the establishment of these *districts* that all uses and *structures* incompatible with permitted uses or *structures* be regulated strictly and permitted only under rigid controls. Therefore, it is the purpose of this Article to provide for strict regulation of *nonconforming* uses and *nonconforming structures*.

Despite the protection given by the courts to such substantial property rights as nonconforming uses, the continuance of uses and structures that do not conform to the current zoning restrictions and to the general scheme of desirable land uses militates against the effectiveness of the planning and zoning scheme as a whole. Accordingly, the Board properly affirmed the order terminating petitioners' use of the subject premises as a flat.

II.

■ The second issue concerns the Board's decision to uphold the denial of petitioner's application for a use variance based on hardship. Contrary to petitioners' argument, "the burden of proof is greater for a use variance than for an area variance. . . . A use variance cannot be granted unless a situation arises where reasonable use cannot be made of the property in a manner consistent with the Zoning Regulations." *Palmer v. Board of Zoning Adjustment*, D.C.App., 287 A.2d 535, 542 (1972).

■ Petitioners have not met this burden by showing such an "extraordinary or exceptional situation or condition of a specific piece of property" that the strict application of the zoning regulations "would result in peculiar and exceptional practical diffi-

culties to or exceptional and undue hardship upon the owner . . . ." *See* D.C. Code 1973, § 5–420(3). The original petitioner's primary claim of hardship is embodied in the Board's finding of fact No. 17: " . . strict application of the Zoning Regulations would cause an economic loss to her by reason of her large financial expenditure in purchasing this property thinking that it could be used as a flat." Such hardship, based on a misapprehension as to available uses of the premises, cannot fairly be attributed to the substituted petitioners. In their affidavit in support of their motion to substitute parties, petitioners stated that they were aware of the litigation pending before this court involving the proper use of their newly acquired premises. Accordingly, they assumed the risk that the property they purchased might be limited as to how it may be used. Petitioners also argue, citing *Clerics of Saint Viator, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 320 A.2d 291 (1974), that a hardship may arise from the character of an existing building and the inability to put that building to a reasonable use consistent with applicable zoning. However, as found by the Board in its finding of fact No. 11, Colonel Johnson and his family occupied the subject premises as a single-family residence for more than 11 years. Such a finding clearly indicates that the building can be put to a reasonable use consistent with applicable zoning.

Finally, we note that petitioners acknowledged, by citing *Taylor v. District of Columbia Board of Zoning Adjustment*, D.C.App., 308 A.2d 230, 233 (1973), that "use variances tend to drastically change the district's nature." An R–3 district is designed for single-family dwellings. *See* Zoning Regulations of the District of Columbia, § 3103 (1958). As noted above, uses of structures that do not conform to current zoning regulations run counter to the effectiveness of the zoning scheme as a whole. The Board, therefore, could properly conclude that flat use of the subject premises would substantially impair the intent, purpose, and integrity of the zoning plan. *See* D.C. Code 1973, § 5–420(3). For the above reasons, we conclude that the Board's decision to deny a variance is supported by substantial evidence.

Accordingly, the order of the District of Columbia Board of Zoning Adjustment terminating flat use and denying a variance is

*Affirmed.*