**Lloyd KUHN, Appellant,**

v.

**Douglas L. CISSEL, Appellee.**

**No. 14152.**

District of Columbia Court of Appeals.

Argued Sept. 4, 1979.

Decided Dec. 4, 1979.

Thomas Hylden, Washington, D. C., for appellant.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Acting Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Deputy Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KERN, NEBEKER and MACK, Associate Judges.

MACK, Associate Judge:

Appellant, a resident of Arlington, Virginia, sued appellee, the property clerk of the Metropolitan Police Department, for the return of his shotgun which had been voluntarily surrendered to the police by a third party. The trial court refused to order the shotgun returned, ruling that it was a "dangerous article" within the meaning of D.C.Code 1973, § 22–3217[1] and must be disposed of accordingly. We affirm on other grounds.

In October 1976, appellant brought his shotgun into the District of Columbia to loan to a friend. The gun remained in the friend's custody until November 1976, when police were called to the home by the friend's wife. The wife voluntarily surrendered the gun to a Metropolitan Police Officer and it was turned over to the property clerk for disposal. The gun had never been registered in the District, and had been in the jurisdiction for more than 48 hours.[2]

Upon appellant's request for the return of his shotgun, the property clerk conducted a hearing, and ruled that he was not entitled to receive the gun. Appellant then brought suit in Superior Court for return of the gun. The trial court, after de novo proceedings,[3] reached the same conclusion as the property clerk, holding that

1. D.C.Code 1973, § 22–3217 states in pertinent part:

(a) As used in this section, the term "dangerous article" means (1) any weapon such as a pistol, machine gun, sawed-off shotgun, blackjack, slingshot, sandbag, or metal knuckles, or (2) any instrument, attachment, or appliance for causing the firing of any firearms to be silent or intended to lessen or muffle the noise of the firing of any firearms.

2. It is uncontested that the ownership and possession of the shotgun in Virginia by appellant is legal under the laws of the State of Virginia.

3. Although the complaint was characterized as an appeal, it was brought under both the general civil jurisdiction statute (D.C.Code 1973, § 11–921) and the specific jurisdiction conferred by D.C.Code 1973, § 22–3217(d)(3). Under either basis, the Superior Court proceeding is de novo. Superior Court review of a property clerk determination in § 22–3217(d)(3) is stated in the same language as the authority of

the property clerk—"to determine which claimant, if any, is entitled to possession . . . and to enter a judgment." This court has ruled that review of a determination by the property clerk under § 4–156 is de novo. Lewis v. Aderholdt, D.C.App., 203 A.2d 919, 923, cert. denied, 382 U.S. 872, 86 S.Ct. 111, 15 L.Ed.2d 110 (1964); see Carroll v. E. Heidenheimer, Inc., D.C.Mun.App., 44 A.2d 71 (1945); accord United States v. Wright, 197 U.S.App.D.C. ——, 610 F.2d 930 (D.C.Cir.1979). This is so because the property clerk is not required to have any type of legal training or conduct proceedings in such a way as would conform to the minimum due process requirements of an administrative determination affecting property rights. This same logic applies whether the property clerk's decision is made pursuant to § 4–156 or § 22–3217(d)(3). In the instant case, the stipulated facts state that the property clerk's hearing was conducted pursuant to § 4–156.

since the gun was unregistered at the time it was delivered to the police, it was unlawfully possessed by the friend[4] and thus constituted a nuisance.[5] The court rejected appellant's argument that D.C.Code 1978 Supp., § 6–1875 required the return of the weapon, reasoning that the statute did not apply to the instant case because there had been no arrest or prosecution of the wife.[6]

For reasons set forth below, we sustain the trial court's ruling. However, we find § 6–1875 clearly applicable to the facts of this case. We decline to decide whether a shotgun could be a "dangerous article" under § 22–3217.[7]

D.C.Code 1973, § 4–156[8] requires the property clerk to return property to its

4. D.C.Code 1979 Supp., § 6–1816 provides in pertinent part:

An application for a registration certificate shall be filed (and a registration certificate issued) prior to taking possession of a firearm from a licensed dealer or from any person or organization holding a registration certificate therefor. In all other cases, an application for registration shall be filed immediately after a firearm is brought into the District. It shall be deemed compliance with the preceding sentence if such person personally communicates with the Metropolitan Police Department (as determined by the Chief to be sufficient) and provides such information as may be demanded: Provided, that such person files an application for a registration certificate within 48 hours after such communication.

5. D.C.Code 1973, § 22–3217 provides in pertinent part:

(b) A dangerous article unlawfully owned, possessed, or carried is hereby declared to be a nuisance.

* * * * * *

(e) A person claiming a dangerous article shall be entitled to its possession only if (1) he shows on satisfactory evidence that he is the owner of the dangerous article or is the accredited representative of the owner, and that the ownership is lawful; and (2) he shows on satisfactory evidence that at the time the dangerous article was taken into possession by a police officer it was not unlawfully owned and was not unlawfully possessed or carried by the claimant or with his knowledge or consent; and (3) the receipt of possession by him will not cause the article to be a nuisance. A representative is accredited if he has a power of attorney from the owner.

6. D.C.Code 1978 Supp., § 6–1875 states:

(a) If a person or organization within the District voluntarily and peaceably delivers and abandons to the Chief any firearm, destructive device or ammunition at any time, such delivery shall preclude the arrest and prosecution of such person on a charge of violating any provision of this chapter with respect to the firearm, destructive device, or ammunition voluntarily delivered. Delivery under this section may be made at any police district, station, or central headquarters, or

by summoning a police officer to the person's residence or place of business. Every firearm and destructive device to be delivered and abandoned to the Chief under this section shall be unloaded and securely wrapped in a package, and, in the case of delivery to a police facility, the package shall be carried in open view. No person who delivers and abandons a firearm, destructive device, or ammunition under this section, shall be required to furnish identification, photographs, or fingerprints. No amount of money shall be paid for any firearm, destructive devices, or ammunition delivered and abandoned under this section.

(b) Whenever any firearm, destructive device, or any ammunition is surrendered under this section or pursuant to section 6–1820(c)(1), the Chief shall inquire of the United States Attorney and the Corporation Counsel for the District whether such firearm is needed as evidence; Provided, That if the same is not needed as evidence, it shall be destroyed.

7. The records reflect that the parties argued the applicability of § 6–1875 in the court proceedings. This court is entitled to affirm the ruling of the trial court on any ground, including one not expressly relied on by the trial court. Hall v. Cafritz, D.C.App., 402 A.2d 828, 830 n. 6 (1979).

8. D.C.Code 1973, § 4–156 states in pertinent part:

(a) Upon satisfactory evidence of the ownership of property or money described in section 4–155 he [the property clerk] shall deliver the same to the owner, his next of kin, or legal representative . . . . .

* * * * * *

(d) Except as provided in sections 4–163, 4–164 and 4–165 hereof, no property or money in the possession of the property clerk alleged to have been feloniously obtained or to be the proceeds of crime shall be delivered under this section if it is required to be held under the provisions of section 4–158 hereof; nor shall it be delivered within one year after the date of receipt of said property or money by the property clerk unless the United States attorney in and for the District of Columbia shall certify that such property or

owner unless the property was feloniously obtained, is the proceeds of a crime, or is needed as evidence in the prosecution of a crime. Since appellant is the owner of the shotgun and it is not needed as evidence, he is entitled to the return of his shotgun under § 4–156 unless some other statute specifically provides otherwise. Of the two statutes which limit operation of this general statute where firearms are involved, D.C. Code 1973, § 22–3217 and D.C.Code 1978 Supp., § 6–1875, the latter is applicable to the facts of this case.

 Section 6–1875 is part of the Firearms Control Act of 1975 (the Act or the Firearms Act)[9] enacted in 1976. Concerned with the dangerous increase in the number and use of guns in the jurisdiction, the Council of the District of Columbia passed this legislation requiring the registration of all guns, and expanding the type of weapons which cannot be possessed in the District.[10] The Act bars anyone from receiving, possessing, or having under his or her control any firearm or destructive device unless it is registered,[11] and makes unregisterable certain firearms.[12] Under the Act, application for a registration certificate must be filed within 48 hours of bringing the firearm into the District. D.C.Code 1978 Supp., § 6–1816. In the present case, although the shotgun could have been lawfully possessed in the District, no application for a registration certificate was made either by appellant or his friend. Thus its

possession within the District by appellant's friend was unlawful.

Section 6–1875 sets forth the manner in which a person may voluntarily surrender or deliver a weapon, registered or not, to the Metropolitan Police Department. Subsection (a) specifically prevents the arrest or prosecution of the surrendering person for violations of the Act. Subsection (b) directs that the surrendered firearm be destroyed unless it is needed as evidence. In the trial below and in oral argument, appellant argued that § 6–1875 does not apply to this case for two reasons: (1) Since the wife was not subject to arrest or prosecution under the Act, no immunity was needed, obviating the application of subsection (a). Without subsection (a) immunity, the subsection (b) provision for weapon destruction could not have independent application. (2) Section 6–1875 was only intended to apply to the situation where the owner or someone in possession with the owner's consent surrendered the weapon. Where a third party delivered the firearm, the owner's property rights would remain.

 First, it is clear to us that the wife was technically in violation of § 6–1811 both by exercising sufficient control over the shotgun in its delivery to the police, and by being in constructive possession of it while it was kept in her home. Therefore, she could have been subject to arrest or prosecution were it not for the immunity provisions of § 6–1875(a). However, even if

---

money is not needed as evidence in the prosecution of a crime.

9. D.C.Code 1978 Supp., §§ 6–1801 et seq.

10. See Council of the District of Columbia Report, Bill No. 1–164, April 21, 1976, at 2–6.

11. D.C.Code 1978 Supp., § 6–1811 states in pertinent part:

Except as otherwise provided in this chapter, no person or organization shall within the District receive, possess, have under his control, transfer, offer for sale, sell, give, or deliver any destructive device, and no person or organization shall, within the District possess or have under his or its control any firearm, unless such person or organization is the holder of a valid registration certificate for such firearm.

12. D.C.Code 1978 & 1979 Supp., § 6–1812 states:

No registration certificate shall be issued for any of the following types of firearms:
(a) Sawed-off shotgun;
(b) Machine gun;
(c) Short-barreled rifle;
(d) Pistol not validly registered to the current registrant in the District prior to September 24, 1976: Provided, that the provisions of this subsection shall not apply to any organization which has in its employ one (1) or more commissioned special police officers or other employees licensed to carry firearms, and which arms such employees with firearms during such employees' duty hours.

she were not in violation of any section of the Act, we reject appellant's contention below, and in oral argument, that § 6–1875(b) had no independent application. There is nothing in the language of the statute itself, nor in the legislative history,[13] to warrant such a construction. Subsection (a) provides immunity for one who surrenders or delivers a weapon. It does not state that if such immunity is unnecessary, the weapon is to be returned to the owner. We will not read this exception into the statute without a clear indication that this was the intent of the Council. Indeed, in light of the Council's objective of closely regulating firearms traffic and discouraging possession of weapons in the District, the destruction of weapons held in violation of the Act is a necessary component of the overall scheme.[14] This purpose would be defeated if § 6–1875 is construed as prohibiting the destruction of a gun merely because the gun was surrendered by someone not subject to prosecution under the Act.

▮▮▮▮ Appellant's second argument is similarly flawed. Appellant asserts that since § 6–1875 only provides immunity for the immediate possessor who surrenders a weapon, and not for the owner or other person entitled to possession, by the same token the statute was not meant to cut off the owner's property rights when someone else surrenders the property. As with the first argument, the clear language of the statute and its legislative history do not reveal any intention to so limit its application. No distinction is made anywhere between a surrender by the gun owner or one in possession with his consent, and surrender by a third party. Nor is ownership or consensual possession mentioned as exempt from the operation of § 6–1875(b). To read the section as appellant suggests would lead to the anomalous result that the owner of an illegally possessed gun could recover the weapon so long as it was surrendered to the police by a third party. The owner might be subject to other penalties for violation of the Act, but could nevertheless reacquire the weapon.[15] We cannot believe the Council intended such a result. The statute is concerned with the presence of firearms in the District, not with the identity of the person who surrenders them. Any firearm not properly in compliance with the Act is thus subject to destruction.

▮▮▮▮ We conclude that § 6–1875 applies in the instant case, despite the fact that the owner could lawfully possess the shotgun in Virginia, and the weapon would be legal if registered in the District. To hold otherwise would permit D.C. residents to undermine enforcement efforts under the gun control laws aimed at restricting the traffic in firearms simply by borrowing guns from jurisdictions without penalizing the owners. In order to uphold these purposes, § 6–1875(b) mandates the destruction of weapons surrendered to the police under these circumstances.[16] Persons who bring

13. The Section-by-Section Analysis of this provision contains no indication that its application should be restricted. Council of the District of Columbia Report, *supra* at 30.

14. The Council specifically stated that the bill reflected its legislative decision that "handguns and shotguns have no legitimate use in the purely urban environment of the District of Columbia" and that "pistols and shotguns are no longer justified in this jurisdiction." Council of the District of Columbia Report, *supra* at 13.

15. Although no one raised the issue either at trial or on appeal, we note that both appellant as lender, and his friend as borrower, have violated another section of the Firearms Act, D.C.Code 1978 Supp., § 6–1871(b), which states:

No person may loan, borrow, give, or rent to or from another person, any firearm, destructive device, or ammunition.

Since the appellant brought the shotgun into the District to lend to his friend, he violated this provision. Assuming, *arguendo,* his construction of § 6–1875, he would be entitled to the return of the shotgun since someone else surrendered it, even though he had violated the Act.

16. Appellant's contention that this construction of § 6–1875(b) would be an unconstitutional taking for government use of his property without just compensation under the Fifth Amendment is without merit. We noted in *Fesjian v. Jefferson,* D.C.App., 399 A.2d 861, 866 (1979), that another section of this very statute (§ 6–1820(c) providing for disposition of weap-

guns into the District resulting in a violation of the Act are not entitled to recover possession when they have been surrendered to the police. This construction serves to induce such persons to exercise greater care in transferring the possession of their firearms in violation of District of Columbia law.

*Affirmed.*

NEBEKER, Associate Judge, dissenting:

The majority evades the issue presented in this case. It then, mistakenly in my view, decides the case on a basis not considered by the administrator or the Superior Court which reviewed his decision.[1]

Since D.C.Code 1973, § 22–3217(a) applies, *inter alia,* to a "sawed-off shotgun" it perforce excludes an unaltered shotgun. It is little wonder that the majority retreats to another basis for reaching its result. The mechanical and hence legal difference be-

tween these two weapons has long been recognized. The short-barreled shotgun is readily concealable while being carried by someone. At close range it has grisly capability. This is not to say that an unaltered shotgun is a benign object, but the differences between the two are so stark as to be universally recognized. *See, e. g.,* D.C.Code 1973, § 22–3214 ("No person shall within the District of Columbia possess any . . sawed-off shotgun . . . ."). This provision has strikingly similar descriptive language to § 22–3217(c); D.C.Code 1978 Supp., § 6–1802(15) & (16) and 18 U.S.C. § 921(a)(5) & (6) (definition of a "shotgun" and a "short-barreled shotgun.").

The administrator ruled that this unaltered shotgun came within the definition of a "dangerous article" because he deemed it to be a "weapon such as pistol, machine gun, sawed-off shotgun, blackjack, slingshot, sandbag, or metal knuckles"—the lan-

ons denied registration) "is an exercise of legislative police power and not of eminent domain" and thus not prohibited by the Fifth Amendment. Moreover, appellant's reliance on *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), is misplaced. In that case the lessor of a yacht sought its return after it had been confiscated from the lessees under a statute that required forfeiture of vessels used in the transport of illicit drugs. The Supreme Court upheld the forfeiture of the yacht despite the fact that the lessor was completely innocent and unaware of its illegal use. The Court indicated that there might be limits to the constitutionality of forfeiture statutes where the owner could prove not only that he was uninvolved in and unaware of the wrongful activity, but also had done all that could reasonably be expected to prevent the prohibited use. *Id.* at 689, 94 S.Ct. 2080. Appellant here is not an innocent owner. He brought the shotgun into the District and loaned it to his friend in violation of § 6–1871. He took no steps to insure that the Firearms Act was complied with. Therefore, appellant does not have standing to raise this due process issue.

1. I will not dwell on the merits of the majority opinion, for it is not legally germane. However, if one reads D.C.Code 1973, § 6–1875 in conjunction with D.C.Code 1978 Supp., § 6–1801, it is inescapable that the Firearms Control Regulation Act of 1975 (*see* D.C.Code 1978 Supp., § 6–1801 *et seq.*) was aimed at those persons residing or in transit within the District of Columbia. Section 6–1801 enunciates in

plain language the findings and purpose of the Firearms Control Act which reads as follows:

The Council of the District of Columbia finds that in order to promote the health, safety and welfare of the people of the District of Columbia it is necessary to:

(1) Require the registration of all firearms that are owned by private citizens;

(2) Limit the types of weapons persons may lawfully possess;

(3) Assure that only qualified persons are allowed to possess firearms;

(4) Regulate deadly weapons dealers; and

(5) Make it more difficult for firearms, destructive devices, and ammunition to move in illicit commerce within the District of Columbia. (Sept. 24, 1976, D.C.Law 1–85, § 2, 23 DCR 2464.)

The appellant is a resident of Virginia. He was not in transit within the District of Columbia. He merely entrusted his shotgun to his friend, not his friend's wife, for a singular purpose—to be used in sports activity with his friend's son, in Maryland. The mutually understood purpose did not contemplate its use within the borders of the District of Columbia. The Act was not designed to cover these unusual circumstances.

Moreover, the weapon was not surrendered to the police in the way the Act contemplates. It was not shown to have been "unloaded and securely wrapped in a package" as required by D.C.Code 1973, § 6–1875. It was handed to police by an angry wife who had summoned them because of her husband's behavior.

guage of § 22–3217. The Superior Court affirmed that ruling on the appeal to it by addressing the same—and no other—question.[2] The error is so clear that nothing more need be said on the point. The majority implicitly recognizes that error by their strained effort to find another basis to uphold the administrator.

The thrust of my dissent is on a more important point. The majority finds it permissible to shift legal ground on the thesis that a trial court's judgment can be affirmed on a legal basis not relied on by it. *See* the majority opinion at 185 n. 6. It is not the validity of that theorem, but its application to this case where the majority goes awry. *But compare D. T. Corporation & 4934 Inc. v. D. C. Alcoholic Beverage Control Board,* D.C.App., 407 A.2d 707 (1979) for proper application of the rule.

The rule that a trial court judgment can, on review, be sustained on any available legal theory, but an administrative agency decision must stand or fall on the basis used by the agency is axiomatic. *See S. E. C. v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943). The District of Columbia expressly adopted this rule in *Simpkins v. Brooks,* D.C.Mun.App., 49 A.2d 549 (1946) and has reaffirmed its dedication to the doctrine in the recent past. *See, e. g., Capitol Hill Restoration Society v. Zoning Commission,* D.C.App., 380 A.2d 174, 185 (1977); *Silverstone v. District of Columbia Board of Zoning Adjustment,* D.C.App., 372 A.2d 1286, 1287–88 (1977).

The rule established by *S. E. C. v. Chenery Corp., supra,* is fairly simple and straightforward.

The rule relates to the issue of whether to remand or to affirm in a given situation, depending upon whether the decision-maker is a judge or is a jury. If the decision-maker is a judge, then regardless of the reasoning employed or the law applied to reach the decision, it will be affirmed so long as a plausible ground for affirmance exists. However, where the decision-maker is a jury, then the appellate court must remand for the jury to make a decision, even if a conceivably correct ground for the decision exists. [*See Ibn-Tamas v. United States,* D.C. App., 407 A.2d 626, 651 (1979) Nebeker, J., dissenting.]

In addition, *Chenery* states the controlling rationale for this and its applicability to administrative decisions:

The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate. But it is also familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury. *Like considerations govern review of administrative orders. If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.* [*S. E. C. v. Chenery Corp., supra,* 318 U.S. at 88, 63 S.Ct. at 459 (emphasis added.)]

The majority has failed to recognize that this is not an appeal from a judgment of the Superior Court rendered by virtue of its usual jurisdictional headwater—D.C.Code 1973, § 11–921. Rather the Superior Court

2. The appellee argues that the language "any weapon such as a . . . sawed-off shotgun," in § 22–3217(a) permits including an unaltered shotgun within the statute's definition. But as observed the two are mechanically and legally different. By the appellee's argument, a rubber band or a gold ring would be a dangerous article. The former, as any school boy knows, when stretched between two fingers, can make an effective slingshot. A ring can be as harmful as metal knuckles in hand combat.

was acting in an appellate—or review—capacity. It had before it an "appeal" from a decision of the property clerk. *See* § 22–3217(d)(3). The property clerk was the administrator before whom the appellant's claim for return of the weapon was filed pursuant to subsection (d)(1). The property clerk was charged to "hear and receive evidence" on the claim and to "reduce his decision to writing" by subsection (d)(2). This is a classic administrative review of a type of a contested case[3] by the Superior Court in its rather unique role as an appellate tribunal under subsection (d)(3).

I am confident that my colleagues regret that they have had to retreat to such inapposite precedent as *Lewis v. Aderholt*, D.C. App., 203 A.2d 919 (1964), *Carroll v. Heidenheimer*, D.C.Mun.App., 44 A.2d 71 (1945) and *United States v. Wright*, 197 U.S.App. D.C. ——, 610 F.2d 930 (D.C.Cir.1979), in order to wedge this case into trial court, rather than agency-type review. Those cases are detinue or replevin actions or disputes as to title to property where no statute provided for judicial review of the property clerk's decision that the property must be confiscated and destroyed. Here such review is provided by "appeal" to the Superior Court.

I respectfully submit, therefore, that we are not free to seek and find another basis for affirmance in this case. We must confine ourselves to the administrator's basis for decision. If that decision was in error either the Superior Court or this court must reverse and remand for appropriate disposition. I would require return of the weapon to appellant.

---

3. *Cf. Chevy Chase Citizens Association v. District of Columbia Council*, D.C.App., 327 A.2d 310 (1974) (en banc) and *Citizens Association of Georgetown v. Washington*, D.C.App., 291 A.2d 699 (1972).