**Sophia LEWIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Sean Brown, Appellant,**

v.

**United States, Appellee.**

**Nos. 04–CO–894, 04–CO–895.**

District of Columbia Court of Appeals.

Argued Feb. 17, 2005.

Decided April 7, 2005.

Thomas Farquhar, Washington, appointed by the court, for appellant Sophia Lewis.

William G. Dansie, appointed by the court, for appellant Sean Brown.

Valinda Jones, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, David B. Goodhand, and Jeffrey Pearlman, Assistant United States Attorneys, were on the brief for appellee.

Before SCHWELB and REID, Associate Judges, and FERREN, Senior Judge.

FERREN, Senior Judge:

Appellants Sean Brown and Sophia Lewis were each charged with two counts of possession of a prohibited weapon (PPW),[1] three counts of possession of an unregistered firearm (UF),[2] and one count of unlawful ammunition (UA).[3] Before trial, Brown filed a motion to dismiss the information on the ground that he was immune from prosecution under D.C.Code § 7–2507.05(a) (2001).[4] Lewis joined in the motion claiming that any immunity available to Brown was available vicariously to her as well. The trial court denied the motion after a hearing, concluding that Brown was not entitled to immunity because he had not complied with the statutory requirements for voluntarily and peaceably delivering and abandoning a weapon. We affirm.

## I.

On January 30, 2004—the day before his arrest in this case—appellant Brown was arrested on weapons charges.[5] While in

---

1. D.C.Code § 22–4514(a) (2001).

2. D.C.Code § 7–2502.01(a) (2001).

3. D.C.Code § 7–2506.01(3) (2001).

4. D.C.Code § 7–2507.05(a) (2001) provides in relevant part:

 If a person or organization within the District voluntarily and peaceably delivers and abandons to the Chief any firearm ... or ammunition at any time, such delivery shall preclude the arrest and prosecution of such person on a charge of violating any provision of this unit with respect to the firearm ... or ammunition voluntarily delivered. Delivery under this section may be made at any police district, station, or central headquarters, or by summoning a police officer to the person's residence .... Every firearm ... to be delivered and abandoned to the Chief under this section shall be unloaded and securely wrapped in a package, and, in the case of delivery to a police facility, the package shall be carried in open view ....

5. On January 30, 2004, Metropolitan Police Department officers observed several males standing at the corner of Flager and W

custody in connection with that arrest, Metropolitan Police Department (MPD) officers informed Brown that rifles were illegal in the District of Columbia and that the proper procedure for surrendering any weapon would be to deliver it to a police station. At a hearing on his motion to dismiss the information, Brown testified that MPD officers told him that, in order to dispose of the rifles properly, he would have to unload them and wrap them up. On cross-examination by the prosecutor, Brown further testified that his conversations with law enforcement officers on January 30 concerned weapons he kept in other states, not in the District of Columbia.

The next day, January 31, Brown was released from police custody and, according to his testimony, walked directly home to 2041 Rosedale Street, N.E., intending to gather up weapons and ammunition that he kept there and surrender them at MPD headquarters. Brown added that when he arrived at 2041 Rosedale Street, N.E., he gathered three firearms—two rifles and one shotgun—as well as ammunition located in the home, and placed them into a red duffel bag. Brown further testified that, before bagging the weapons, he did not inspect one of the rifles (which he described as a double-barrel shotgun) to determine whether it was loaded. However, he inspected the two rifles, which were semi-automatic weapons, and determined that they were unloaded.

Meanwhile, MPD officers had obtained a warrant to search 3048 Thayer Street, N.E.—the address that Brown had given as his home address when he was arrested on January 30. Several women, one of whom was appellant Lewis (Brown's girlfriend), were at the Thayer Street house when MPD officers arrived. As officers were entering the residence to execute the search warrant, an elderly woman told Officer Correa that Brown did not live there, although he stored things there in the garage.[6] According to the woman, Brown lived with Lewis at 2041 Rosedale Street, N.E. While officers were in the Thayer Street house, Lewis received a telephone call. Officer Thomas Ellingsworth watched Lewis while she was on the phone and testified that she was acting very secretive because she kept saying, "Hello, yes, uh-huh, uh-huh, I can't speak right now, the police are here." When Lewis noticed that Officer Ellingsworth was observing her, she hung up the telephone very quickly.

Upon learning that Brown lived with Lewis at 2041 Rosedale Street, N.E., Officer Correa returned to the station house to prepare an emergency search warrant, while Officers Ellingsworth, Figueroa, and Rodriquez went to the Rosedale Street address to secure the residence until a search warrant could be obtained. Alone in a marked police car, Officer Ellingsworth pulled up in front of 2041 Rosedale Street while Officers Figueroa and Rodriquez arrived at an alley at the rear of the house. Shortly thereafter, Officer Ellingsworth saw Brown open the front door carrying a red duffel bag in his hand. When Brown noticed the police car parked in the

Streets, N.W.—a high drug trafficking area. The officers initiated contact with them, whereupon Officer Miguel Correa noticed an unoccupied pick-up truck idling nearby. When he asked who owned the vehicle, Brown replied, "That's my truck." Officer Correa approached the truck and saw, in plain view, a medium-sized sandwich bag containing several rounds of apparently live ammunition. A subsequent search of the truck revealed a rifle and a gym bag containing more rounds of live ammunition. Brown was then placed under arrest.

6. A search of the garage revealed several rounds of ammunition.

front of his house, he turned around and went back inside. Officer Ellingsworth then contacted Officer Figueroa by telephone. He warned her that Brown had just attempted to come out of the front door, and that he might attempt to leave from the rear. Officer Figueroa, who was positioned in the alley a short distance from the rear of the house, saw Brown open the back door carrying a red bag in his hand. When Brown noticed Officers Figueroa and Rodriquez in the alley, he went back inside the house and quickly closed the door. Brown then re-opened the back door and came outside with a dog, but without the red bag. Figueroa and Rodriquez called out to Brown and began talking to him, although neither officer said anything about the red bag which they had seen Brown carrying moments earlier.

Because Brown's actions seemed suspicious and Officer Figueroa feared that he might try to hide or tamper with evidence, the officers told Brown that he could not go back into his house until other officers arrived to execute a search warrant. Officer Figueroa informed Brown that he and the other officers wanted to search the house for weapons and ammunition. Brown did not tell Officer Figueroa that he had such items inside his house or that he wanted to abandon and surrender them.

Both Brown and Lewis, who subsequently arrived at the Rosedale Street house, gave oral and written consent to search the residence. During the search, officers discovered a red bag on the kitchen table containing three firearms—one of which was loaded with thirteen rounds of ammunition—and a smaller bag of ammunition. The officers also found additional boxes of ammunition in other rooms of the house. Brown and Lewis were placed under arrest.

Before trial, Brown filed a motion to dismiss the information, arguing that he was immune from prosecution pursuant to D.C.Code § 7–2507.05(a), *supra* note 4. The trial court concluded that Brown was not entitled to such immunity, however, because (1) the evidence did not show that he had complied with the statutory requirements that the weapons to be surrendered must be unloaded and securely wrapped, and further, because (2) the evidence of Brown's purported intention to surrender his weapons and ammunition to the police was not clear and unequivocal.[7] At best, according to the court, the evidence of intent was ambiguous; Brown's actions on January 31 were as consistent with an effort to conceal or remove the weapons and ammunition as they were with an effort to package them for surrender. This interlocutory appeal followed.

## II.

 A trial court's decision to grant or deny immunity under D.C.Code § 7–2507.05 is a question of law, subject to our *de novo* review, although we grant deference to the trial court's factual determinations inherent in resolving the question. *See Yoon v. United States*, 594 A.2d 1056, 1066 (D.C.1991); *Stein v. United States*, 532 A.2d 641, 643–44 (D.C.1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528–29, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (footnote omitted)), *cert. denied*, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988); *Davis v. United States*, 564 A.2d 31, 35 (D.C.1989) (en banc). We have previously held that denial of a motion to dismiss on grounds of statutory immunity justifies an

---

7. *See Stein v. United States*, 532 A.2d 641, 646 (D.C.1987) (proof of intent to surrender weapons voluntarily must be "clear and unequivo-

cal") (citation omitted), *cert. denied*, 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988).

interlocutory appeal; thus, we have jurisdiction over this pretrial matter. *See Yoon,* 594 A.2d at 1066; *Stein,* 532 A.2d at 643.

### III.

■ Brown and Lewis argue that the trial court committed reversible error in denying their motions to dismiss the information on grounds of statutory immunity under D.C.Code § 7–2507.05(a), *supra* note 4. First, we consider Lewis. She does not contest that she lived at the Rosedale Street address with Brown, or that she had constructive possession of the weapons and ammunition found there.[8] Furthermore, the record is void of any evidence that Lewis clearly and unequivocally intended to deliver and abandon to the police the weapons and ammunition that were ultimately seized from her residence, or that she took any step to comply with the statutory requirements for the voluntary surrender of the weapons and ammunition. On the contrary, the record reveals that Lewis—who was aware that police officers were looking for weapons and ammunition at the Thayer Street house—never advised the officers that such items could be found on Rosedale Street and that she wished to surrender them to the police. Accordingly, the immunity provision codified at D.C.Code § 7–2507.05 is unavailable to her. *See Stein,* 532 A.2d at 646 (immunity not available to accused who fails to deliver and abandon weapon to police pursuant to statutory requirements), *cert. denied,* 485 U.S. 1010, 108 S.Ct. 1477, 99 L.Ed.2d 705 (1988).

Lewis argues for immunity from prosecution, nonetheless, on the ground that "Brown was in the process of voluntarily and peaceably delivering and abandoning the guns and ammunition at issue to the Chief of Police," and that the immunity available to Brown from those actions is imputable to Lewis as well. Assuming— without deciding—that Brown can be said to have acted not only for himself but also for Lewis, and thus that any immunity granted to Brown should also be given to Lewis, we turn to Brown's contentions.

■ Brown argues that the government unfairly charged him with PPW, UF, and UA because there was ample evidence that he had been in the process of gathering his weapons and ammunition for surrender to the police—until MPD officers impeded his efforts by searching his home and seizing the very items he intended to surrender. We disagree.

Section 7–2507.05(a) affords immunity from arrest and prosecution to those charged with violations under Title 7, Chapter 25 of the District of Columbia Code if they "voluntarily and peaceably deliver[ ] and abandon[ ]" to the police any weapon, destructive device, or ammunition within the purview of that chapter. Section 7–2507.05(a) expressly prescribes the mandatory procedure for surrendering such items. *See Yoon,* 594 A.2d at 1066. In addition, we have said that evidence of an individual's intent to "deliver and abandon" the weapon must be "clear and unequivocal." *Stein,* 532 A.2d at 646 (citations omitted).

Brown testified that when he was arrested on January 30, 2004, and charged

---

**8.** *See Kuhn v. Cissel,* 409 A.2d 182, 186–87 (D.C.1979) (wife of individual who possessed unregistered shotgun could have been prosecuted under unregistered firearm statute on constructive possession theory because weap-

on was kept in her home, but she was entitled to immunity because she called MPD officers to her home and surrendered weapon to them).

with UA,[9] he was advised that all weapons and ammunition that he possessed in his home should be delivered and surrendered to the police. He also acknowledged learning that, in order to dispose of his weapons in the required manner, he would have to "wrap them up and unload them." When officers searched his residence, however, they seized three firearms in a duffel bag, one of which was loaded with thirteen rounds of ammunition. Assuming—solely for the sake of argument—that by placement in the duffel bag the three firearms were "wrapped in a package" within the meaning of the statute, the double-barrel shotgun did not meet statutory requirements, for Brown does not dispute that the shotgun was loaded. See Yoon, 594 A.2d at 1066.

Furthermore, as to the two rifles as well as the shotgun and ammunition, we find no record basis for rejecting the trial court's finding that Brown did not "clearly and unequivocally" intend to surrender and deliver them to the police, as the statute and the case law require. Stein, 532 A.2d at 646. Brown testified that after he was released from custody on January 31, he walked to his house at 2041 Rosedale Street, N.E. (although he had previously indicated to Officer Correa that he resided at 3048 Thayer Street, N.E.) and immediately began to gather his collection of weapons and ammunition and place them in a red bag for surrender to the police. Brown also testified that when MPD officers arrived at his house, he told Officers Figueroa and Rodriquez, who were positioned in the alley at the rear of the house, that he was "going to return the weapons down to the main police precinct ...." His

testimony on this point, however, was contradicted by Officer Figueroa, who testified that Brown had not told them of weapons he wished to surrender to the police. The trial court then noted:

You would expect that if [Brown] were in the midst of getting ready to pack up the guns and surrender them, he would say that immediately to the police officers. They say he didn't .... Even if you put that whole controverted exchange or episode to one side, [Brown] goes to the front door and sees the policeman ... and he doesn't say ["]come right on in officer, I have got the guns here.["] ... He shuts the door and then goes to the back .... [I]t looks like he is going out the front door with the duffel bag, but then he doesn't proceed ... to give it to the police. He then goes back inside, shuts the door .... [H]e goes to the back door and sees the police officer and says, ["]oh, oh,["] and goes back inside. And then he exchanges the duffel bag for the dog.

Based on the testimony of record, we conclude that the trial court did not err in crediting the officers' testimony over that of Brown and finding that Brown's actions on the evening of January 31 were ambiguous at best—that they were consistent as much with an effort to conceal or remove the weapons and ammunition as with an intention to surrender them. As a result, Brown has not carried his burden of proving that his intent to deliver and abandon the firearms and ammunition to the police was clear and unequivocal, as required for immunity under the statute.[10] Brown's ar-

9. See supra note 5.

10. Because Brown cannot prevail on his claim of immunity under Title 22, Chapter 7 of the District of Columbia Code governing the UF and UA offenses, see *supra* notes 2 and 3, we decline his invitation to construe

D.C.Code § 7–2507.05(a) broadly to embrace immunity under Title 22, Chapter 45 governing PPW offenses. We note, however, that we rejected a similar argument in *Stein*, 532 A.2d at 647.

gument on appeal, as well as Lewis's argument dependent on it, accordingly fails.

*Affirmed.*