Robert A. FESJIAN, Petitioner,

v.

Burtell M. JEFFERSON, Chief of Police, Metropolitan Police Department, Respondent.

Robert J. BUENZLE, Petitioner,

v.

Burtell M. JEFFERSON, Chief of Police, Metropolitan Police Department, Respondent.

Arthur P. DAVIS, Jr., Petitioner,

v.

Burtell M. JEFFERSON, Chief of Police, Metropolitan Police Department, Respondent.

Nos. 13183, 13184 and 13186.

District of Columbia Court of Appeals.

Submitted Nov. 16, 1978.

Decided March 19, 1979.

Rehearing Denied April 14, 1979.

Robert A. Fesjian, pro se.

Robert J. Buenzle, pro se.

Arthur P. Davis, Jr., pro se, adopted brief of petitioner Buenzle.

Louis P. Robbins, Acting Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel and Dennis McDaniel, Asst. Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before KELLY, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

These consolidated petitions from a refusal by respondent to register certain firearms present a number of arguments. The arguments challenge the legality of a discrimination between owners of different weapons, the validity of a legislative definition of a machine gun, and the constitutionality of the registration statute which petitioners assert constitutes a prohibited Fifth Amendment "taking." Petitioners also claim that their firearms were automatically registered upon expiration of the statutory time period given the police chief to respond to applications for registration of firearms. We conclude that the automatic registration argument is unpersuasive and determine the statutes in question not to be constitutionally infirm. We, therefore, affirm.

By separate applications, petitioners Robert A. Fesjian,[1] Robert J. Buenzle,[2] and Arthur P. Davis, Jr.,[3] sought to re-register their firearms pursuant to the Firearms Control Act of 1975, D.C. Code 1978 Supp., §§ 6–1801 to –1880. Each of the firearms had been duly registered in previous years. The new applications were submitted in October and November of 1976. Notice of denial of the applications was given petitioners in December of 1977 or January of 1978. Each petitioner requested and was granted a hearing to challenge the denials. Following the hearings, the applications were again denied on the ground that all of the firearms were unregisterable since they were machine guns within the provisions of D.C. Code 1978 Supp., § 6–1812. Section 6–1812 states that "[n]o registration certificate shall be issued for . . . the following types of firearms: . . . . (b) Machine gun." A machine gun is defined as "any firearm which shoots, is designed to shoot, or can be readily converted or re-

---

1. Petitioner Fesjian attempted to register a Browning Hi Power 9mm, semiautomatic pistol.

2. Petitioner Buenzle presented a U.S. M–1 Carbine, .30 caliber rifle for re-registration.

3. Petitioner Davis attempted to register a U.S. M–1 Carbine, .30 caliber; a Colt AR–15 Sportster; and a .22 caliber rifle, all semiautomatic firearms.

stored to shoot: (A) automatically . .; [or] (B) semiautomatically, more than twelve shots without manual reloading." D.C. Code 1978 Supp., § 6–1802(10). The basis for this decision was that each of the weapons was capable of being fed with clips containing more than the permissible number of rounds.

Petitioners challenge the constitutionality of these statutes on several grounds. First, on equal protection grounds, petitioners challenge D.C. Code 1978 Supp., § 6–1816 as being unconstitutionally discriminatory. The terms of § 6–1812[4] render new handguns and new machine guns unregisterable, yet contain a grandfather clause permitting owners of previously registered handguns to retain and re-register their firearms while denying owners of machine guns the same right. Petitioner claim that such a distinction is patently discriminatory, i. e., lacking rational support, especially in light of the asserted fact that handguns are more dangerous and are used in crimes more frequently than semiautomatic firearms like the guns in question. Petitioners contend that the latter-mentioned weapons have legitimate sporting and home protection uses, and they are no doubt correct in that observation.

The Firearms Control Act constitutes an exercise of the police power of the Council of the District of Columbia. Such legislative action need have only a rational basis to overcome an equal protection attack.[5] The statutory grandfather provision distinguishing between owners of previously registered firearms is arguably based on a legislative determination that guns with greater fire power are more dangerous and less tolerable in the District of Columbia than guns with a lesser fire power. A gun, whether clip-fed or otherwise, capable of firing 13 rounds or more without reloading, may reasonably be considered a greater public threat than firearms of more limited capacity. It may be that the Council was prompted to this conclusion by a recognition of the fact that the fire power of a 13-shot semiautomatic firearm threatened the security of the police officers who carry six-shot revolvers. Any number of other lines of thought might have persuaded the Council to classify guns according to their fire power. We hold the determination not to grandfather weapons with greater fire power to have a sufficient rational basis to withstand an attack founded on disparate treatment.

A corollary argument is also made by petitioners that their firearms should not be considered machine guns since they were presented for registration with clips holding less than 13 rounds. It is contended that any use of the firearms with a clip having a capacity of more than 12 rounds would constitute an illegal modification of the gun like sawing off the barrel of a shotgun or attaching a silencer to a gun's muzzle. To deny registration of a gun submitted with a clip holding less than 13 rounds, the argument runs, is to make the assumption that the gun will be illegally modified after registration—an assumption not indulged for any other firearm notwithstanding the fact that any gun could be unlawfully altered by reducing the length of its barrel or adding a silencer.

---

4. The full text of D.C. Code 1978 Supp., § 6–1812 reads:

No registration certificate shall be issued for any of the following types of firearms:
(a) Sawed-off shotgun;
(b) Machine gun;
(c) Short-barreled rifle;
(d) Pistol not validly registered to the current registrant in the District prior to September 24, 1976; and
(e) Pistol not possessed by the current registrant in conformity with the regulations in effect immediately prior to September 24, 1976.

5. *McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) states:

[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The Constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

The flaw in this argument is that the Council, in adopting § 6–1802(10), was concerned primarily with the inherent fire power of certain weapons, not with the question of firearm modification after registration. The rationale supporting this provision to prohibit residents of the District from possessing guns whose fire power has legislatively been deemed to be dangerous, differs from the rationale undergirding the statute which forbids certain modifications of firearms to be made after registration. The nature of the weapons, plus the administration of the program, not the character of the weapon's owner, prompted the Council to adopt this statute. Since the guns in question, by virtue of their structure, had the capability to shoot the prohibited number of rounds without reloading, they may properly be found to be unregisterable.

■ Second, petitioners claim that the "designed to shoot . . . more than twelve shots without manual reloading" definition of a prohibited firearm in § 6–1802(10) constitutes a test so unworkable and inequitable as to be impermissibly overbroad and vague. They contend that the number of rounds a firearm is designed to shoot is irrelevant to a determination of which firearms are dangerous weapons, since many guns which were not designed to shoot 13 or more rounds semiautomatically can be structurally modified to perform like a § 6–1802(10) machine gun. Petitioners' argument is that the "designed to shoot" test could conceivably be used to prohibit nearly all clip and breech-loading guns since these guns can be modified to shoot the prohibited number of rounds. We are asked to find that such a statutory prohibition is overbroad, and that the "designed to shoot" test is vague, failing to clearly identify the class of prohibited firearms and thus failing to give gun owners the constitutionally required fair notice.

Without reaching the merits of either claim, we conclude that both constitutional challenges to the statute are unavailing. The language of the statute unequivocally states that firearms are unregisterable not only if "designed to shoot" more than twelve rounds without reloading, but also if they "can be readily converted or restored to shoot" the prohibited number of rounds semiautomatically. At the hearing, petitioners admitted that their semiautomatic guns could hold clips of more than 12 rounds. It is evident, therefore, that the denial of petitioners' applications was based on the "readily converted to shoot" phrase of the statute. Having determined that the "readily converted" test applies here and clearly prohibits registration of petitioners' firearms, we hold that petitioners lack standing to challenge the statute's "designed to shoot" test as being either vague, *United States v. National Dairy Corp.*, 372 U.S. 29, 31–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), or overbroad in some hypothetical cases, cf. *Broadrick v. Oklahoma*, 413 U.S. 601, 607–08, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973) (holding that an individual has no standing to challenge on First Amendment grounds the "outermost boundaries" of an act as being vague or overbroad when that individual's "conduct falls squarely within the 'hard core' of the statute's proscriptions"). We need not decide the question of the applicability of the overbreadth argument (most usually advanced in First Amendment context) to issues outside the scope of the First Amendment rights of expression or association. Note, "The First Amendment Overbreadth Doctrine," 83 Harv.L.Rev. 844 (1970).

■ Petitioners' third constitutional challenge alleges that D.C. Code 1978 Supp., § 6–1820(c) provides for a taking of their property without just compensation in violation of the Fifth Amendment. That section of the Code provides three alternatives for disposition within seven days of a firearm denied registration. The unsuccessful applicant may (1) "peaceably surrender" the firearm to the chief of police, (2) "lawfully remove" the firearm from the District for as long as he retains an interest in the firearm, or (3) "lawfully dispose" of his interest in the firearm. Petitioners' argument is that the second and third alternatives require, under the terms imposed by

the Federal Gun Control Act of 1968, 18 U.S.C. § 922 (1970), a quick "forced sale" of the firearms at less than fair market value to a dealer in firearms, while the first alternative would provide not even a salvage value return.

Assuming, *arguendo*, that the statute authorized a "taking," we note that the Fifth Amendment prohibits taking of "private property . . . for public use, without just compensation." Such a taking for the public benefit under a power of eminent domain is, however, to be distinguished from a proper exercise of police power to prevent a perceived public harm, which does not require compensation. *Lamm v. Volpe*, 449 F.2d 1202, 1203 (10th Cir. 1971). That the statute in question is an exercise of legislative police power and not of eminent domain is beyond dispute. The argument of petitioner, therefore, lacks merit.

A final argument presented is that the failure of the police chief to act within 365 days upon petitioners' applications for registration should be construed to constitute an automatic grant of the applications by operation of law. The provision of the Firearms Act setting forth the time frame for administrative review of firearms applications is D.C. Code 1978 Supp., § 6–1817(b). The pertinent part of this statute reads: "That in the case of an application to register a firearm validly registered under prior regulations, the [police] Chief shall have 365 days after receipt of such application to approve or deny such application." No penalty or consequence of any nature is specified for failing to act within the time period designated. Absent an indication in the statute that such a failure to act results in a divestment of the Chief's authority to deny applications, we hold that the time period set out in the statute is advisory rather than, as petitioners suggest, mandatory. *See Ralpho v. Bell*, 186 U.S.App.D.C. 368, 388, 569 F.2d 607, 627 (1977); *Diamond Match Co. v. United States*, 181 F.Supp. 952, 959 (Cust.Ct.1960). Further, under the provisions of the District of Columbia Administrative Procedure Act, D.C. Code 1973, § 1–1510(2), when an administrator fails to

act punctually on a matter before him for consideration, this court is empowered solely "to compel agency action unlawfully withheld or unreasonably delayed." *Id.* See *Harper v. Levi*, 171 U.S.App.D.C. 321, 328, 520 F.2d 53, 60 (1975) (commenting on identical provision of the Federal Administrative Procedure Act, 5 U.S.C. § 706 (1970)). Hence, even if petitioners had exhausted their administrative remedies and had not received any response from the police department after one year, the most advantageous result petitioners could exact from this court would be an order compelling the MPD to act on the applications.

Finding no constitutional infirmity in the Firearms Control Statutes nor any justification to reverse respondent's decisions, the administrative orders are

*Affirmed.*