Dennis J. TOWNSEND, Appellant,

v.

UNITED STATES, Appellee.

No. 86–1411.

District of Columbia Court of Appeals.

Argued May 9, 1989.
Decided June 16, 1989.

Robert E. Sanders, appointed by the court, for appellant.

Erik P. Christian, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Glenn A. Fine, Washington, D.C., and Gregory E. Jackson, Asst. U.S. Attys., were on the brief, for appellee.

Before BELSON and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

BELSON, Associate Judge:

Appellant challenges his conviction for possession of an unregistered firearm in violation of D.C.Code § 6–2311(a) (1981)[1] on the basis that the government did not prove beyond a reasonable doubt that the object possessed by appellant was a "firearm." Finding appellant's contention unpersuasive, we affirm.[2]

The evidence at trial disclosed that around 1:30 a.m. on March 15, 1986, Officer Brian Presley responded to a radio run concerning a man with a gun at 4431 Georgia Ave., N.W. Officer Presley entered the apartment building and arrested appellant. After being advised of his rights, appellant admitted that he possessed an inoperable gun and led Officer Presley to it. Crime scene search officer Richard Hobson testified that he had examined the gun and found it inoperable because the firing pin and spring mechanisms were not intact. He testified that with the necessary parts and expertise he was able to render a similar gun operable in about two minutes. A "Certificate of No Registration" was also admitted into evidence.

Appellant contends that in order to establish a violation of D.C.Code § 6–2311(a), the government was required to prove beyond a reasonable doubt that the object possessed by appellant was a "firearm" within the definition established by D.C. Code § 6–2302(9) (1981). Appellant maintains that in order to accomplish this the government was required to demonstrate

---

1. The charging information mistakenly referred to D.C.Code § 6–1811(a) (1981). In the 1978 District of Columbia Code, the Firearms Control Regulations Act was placed in Chapter 18 of Title 6 on "Health and Safety." It was later amended and moved to Chapter 23 of Title 6 in the 1981 D.C.Code. It is clear from the colloquy between counsel and the court, and from the references in the colloquy and in jury instructions to the controlling statute, that all concerned were aware that appellant was charged with a violation of Chapter 23, rather than Chapter 18, of Title 6 of the D.C.Code. Appellant raises no issue in this regard.

2. Appellant was also charged with assault in violation of D.C.Code § 22–504 (1981) and possession of a prohibited weapon ("PPW") in violation of D.C.Code § 22–3214(b) (1981). Because appellant was acquitted of assault and raises no contention of error in regard to his conviction of PPW, we do not address any issues in connection with these charges.

either that the gun was operable or that appellant intended it to be useable as a firearm.[3] Specifically, appellant relies on the definitional language in § 6–2302(9) which states, *inter alia,* " '[f]irearm' means any weapon which will, or is designed or redesigned, made or remade, readily converted or restored, *and intended to,* expel a projectile or projectiles by the action of an explosive...." (emphasis added).

In *Curtice v. United States,* 488 A.2d 917 (D.C.1985), this court reversed a conviction for a different weapons offense, carrying a pistol without a license ("CPWL"), D.C.Code § 22–3204 (1981), because the weapon was inoperable. In its opinion, the court observed, by way of contrast, that a violation of D.C.Code § 6–2311 does not require proof that the weapon is operable. *Id.* at 917 n. *. Appellant argues that this observation was not "the holding of the case and is certainly not a pronouncement of a comprehensive principle of D.C. law." While admitting that the *Curtice* footnote is correct, appellant argues that what he possessed was not a firearm. He maintains that where there is no showing of operability, D.C.Code § 6–2302 requires proof that the weapon in question was readily convertible to operating condition, and also proof that the defendant intended the weapon to be useable as a firearm, matters which he maintains we did not address in *Curtice.*

We reaffirm our statement in *Curtice* that the registration requirements of D.C. Code § 6–2311(a) are not limited to firearms that are operable. It is true that we have construed § 22–3204, the statute that prohibits the carrying of a "pistol" without a license, to require a showing of operability. *Anderson v. United States,* 326 A.2d 807, 811 (D.C.1974). But that statute, unlike § 6–2311(a), is not accompanied by a definitional section that unmistakably dis-

penses with the need for such a showing. *See* D.C.Code § 22–3201 (1981). In the absence of a definition of the term "firearm" applicable to § 22–3204, we looked to the common usage of that term and observed that it was a "device *capable* of propelling a projectile by explosive force." *Lee v. United States,* 402 A.2d 840, 841 (D.C. 1979) (emphasis added).

Turning to the statute that prohibits the possession of an unregistered firearm, D.C. Code § 6–2311(a), we see that its reach is illuminated by the language we quoted in part above:

> "Firearm" means any weapon which will, or is designed or redesigned, made or remade, readily converted or restored, and intended to, expel a projectile or projectiles by the action of an explosive; the frame or receiver of any such device; or any firearm muffler or silencer....

D.C.Code § 6–2302(9) (1981). Thus, the statute clearly includes in its definition of a "firearm" inoperable weapons that may be redesigned, remade, or readily converted or restored to operability.

We interpret the words "intended to" as referring to the design or purpose of the object in question rather than the state of mind of the person who possesses it. We deem this the plain meaning of those words in the context of the statute. The statute does not prohibit the possession of an object that was designed and intended for an innocent purpose, yet could be used somehow to expel a projectile by explosion. Accordingly, we hold that the phrase "intended to" in § 6–2302(9) imposes no substantive requirement that the government prove that appellant specifically intended the weapon to be useable as a firearm.

Our interpretation of the statute, and in particular our view that it gives the term "firearm" a broad meaning, is buttressed by the legislature's intent in enacting the

---

**3.** Appellant also contends that the evidence was insufficient because the expert used a "similar" gun rather than the actual gun seized from appellant in performing his test to demonstrate ready convertibility. The witness testified that he had used a pistol of the same make and model to take those steps necessary to restore the weapon in question to operability. We deem the evidence sufficient for submission to the jury.

Firearms Control Regulations Act, D.C. Code §§ 6–2301 through 6–2380, and our case law interpreting this comprehensive statutory scheme. *See McIntosh v. Washington*, 395 A.2d 744 (D.C.1978). In *McIntosh* we observed that the provisions of the Firearms Control Regulations Act were intended primarily as regulatory measures adopted pursuant to the District's local "police power," as distinguished from alterations of the existing criminal code. *Id.* at 750, 756.[4] Further, the Act was intended to broaden and increase the limitations on firearms within the District above and beyond the existing criminal code provisions contained in Title 22. Indicative of that legislative intent is the absence of any *scienter* element in the provisions requiring firearms to be registered. *Id.* at 756. In contrasting the two statutes, we also take into account the obvious purpose of § 22–3204 to prohibit the carrying of weapons that are in fact dangerous, which differs from the broader purpose of § 6–2311.

Finally, we observe that in instructing the jury on a count charging violation of § 6–2311(a), it is appropriate for the trial court to quote or paraphrase the definition of "firearm" set forth above, as the trial court did in this case. It would also be in order, especially where the concept of operability has been put in issue in connection with another charge, for the court to clarify that the government has the alternative under § 6–2311(a) of proving either that the weapon is operable, or that it otherwise satisfies the definition of "firearm" set forth in § 6–2302(9).

*Affirmed.*

---

4. Presumably this accounts for the Act's placement in Title 6 of the D.C.Code regarding "Health and Safety" rather than Title 22 which addresses criminal offenses.