**Andre C. TURNER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 95–CM–59.**

District of Columbia Court of Appeals.

Argued Dec. 12, 1995.

Decided Oct. 17, 1996.

Karl N. Metzner, Washington, DC, appointed by the court, for appellant.

Anna Matheson, Assistant United States Attorney, Washington, DC, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and MACK, Senior Judge.

FARRELL, Associate Judge:

▮ Following a bench trial, appellant was found guilty of possession of marijuana (D.C.Code § 33–541(d) (1993)), possession of a prohibited weapon (machine gun) (*id.* § 22–3214(a) (1996)), carrying a pistol without a license (*id.* § 22–3204(a)), possession of an unregistered firearm (*id.* § 6–2311(a) (1995)), and possession of unregistered ammunition (*id.* § 6–2361(3)). The gun convictions arose from possession of a single firearm. Only one argument appellant makes on appeal requires discussion: he contends that his convictions for possession of an unregistered firearm and possession of a prohibited weapon merge because the firearm/weapon is a machine gun, and a machine gun cannot be registered under D.C.Code § 6–2312. We reject this contention and appellant's remaining arguments, except that we agree with him (and the government) that the sentence pronounced orally at the sentencing hearing differs from that recorded on the Judgment and Commitment Order, which requires a remand for conformation of the two.

### I.

▮ Appellant was the front-seat passenger in a car that police stopped for a traffic violation. When a police officer smelled burnt marijuana in the car, he ordered the occupants to step out. Appellant tried to flee and struggled with the officers. One officer eventually pulled from appellant's waistband a Metropolitan Police Department "Glock 17" handgun containing a magazine loaded with seventeen rounds of ammunition. The Glock 17 was a machine gun within the definition of D.C.Code §§ 6–2302(10) and 22–3201(c).[1] The police also found a bag of marijuana in his shoe.

### II.

Appellant contends that his conviction for possession of an unregistered firearm (UF) merged with his conviction for possession of a prohibited weapon (PPW (a)-machine gun). He is mistaken. The now-familiar law on this subject was summarized recently by the Supreme Court:

Courts may not "prescrib[e] greater punishment than the legislature intended." In accord with principles rooted in common law and constitutional jurisprudence, we presume that "where two statutory provisions proscribe the 'same offense,'" a legislature does not intend to impose two punishments for that offense.

For over half a century we have determined whether a defendant has been punished twice for the "same offense" by applying the rule set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Ibid.*

*Rutledge v. United States*, —— U.S. ——, ——, 116 S.Ct. 1241, 1245, 134 L.Ed.2d 419 (1996) (internal citations omitted).[2] While

1. Appellant's argument that he established the defense of "innocent possession" of the firearm as a matter of law has no merit. Evidence established that he had been in possession of the weapon for over four hours when arrested, a fact which—along with his attempted flight—the trial judge properly could find inconsistent with his story that he was on his way to the police station to surrender the gun when arrested. *See, e.g., Hines v. United States*, 326 A.2d 247 (D.C.1974).

2. The Court went on to explain that, "[i]n subsequent applications of the test, we have often concluded that two different statutes define the 'same offense,' typically because one is a lesser included offense of the other." —— U.S. at ——, 116 S.Ct. at 1245.

"the presumption against allowing multiple punishments for the same crime may be overcome if Congress clearly indicates that it intended to allow courts to impose them," *id.* at ——, 116 S.Ct. at 1248 (citations omitted), neither party points to such an indication in this case, and so we apply the *Blockburger* test.[3]

PPW (a) requires proof of a fact that UF does not. The PPW (a) statute, as charged here, provides that "[n]o person shall within the District of Columbia possess any machine gun...." D.C.Code § 22–3214(a). The government thus had to prove that appellant knowingly and intentionally possessed a machine gun. See CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.72 A (4th ed.1993).[4] The UF statute, by contrast, does not require proof that the defendant possessed a machine gun or any other enumerated firearm. It punishes the act of "possess[ing] or control[ling] *any firearm,* unless the person ... holds a valid registration certificate for the firearm." D.C.Code § 6–2311(a) (emphasis added). A "firearm" includes "any weapon which will, or is designed or redesigned, made or remade, readily converted or restored, and intended to, expel a projectile or projectiles by the action of an explosive...." *Id.* § 6–2302(9). On the other hand, besides proof that the defendant possessed a firearm, UF requires proof that the firearm was not registered to the defendant in the District of Columbia. *Tyree v. United States,* 629 A.2d 20, 22 (D.C.1993); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.73. PPW (a) requires no proof of that fact. Under *Blockburger,* therefore, the two crimes are not the "same offense."

Appellant argues to the contrary by pointing to D.C.Code § 6–2312(a), which provides:

A registration certificate *shall not* be issued for a:

(1) Sawed-off shotgun;

(2) *Machine gun;*

(3) Short-barreled rifle; or

(4) Pistol not validly registered to the current registrant in the District prior to September 24, 1976 [with certain enumerated exceptions]. [Emphases added.]

Because a machine gun cannot be registered, appellant asserts that UF changes character, losing one of its statutory elements, when possession of a machine gun is charged: then (he says) "proof that the defendant merely possessed such a weapon is sufficient as a matter of law to make out the registration violation."

Appellant confuses an element of the offense with the manner by which it is proved. Section 6–2312(a) does not convert UF into a different crime in some applications. It does not define a possessory offense at all, but simply prohibits issuance of a registration certificate for the enumerated firearms. Its *effect* may be that possession of a machine gun violates the UF statute, but that is only because it relieves the government of having to prove non-registration by the usual means, *i.e.,* a certificate of non-registration. *See, e.g., Townsend v. United States, supra* note 4, 559 A.2d 1319. Instead of introducing such a certificate (as it did in this case), the government presumably may ask the trial court to take judicial notice of § 6–2312(a)'s ban and rest on that proof of non-registration. *See, e.g.,* 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 335, at 413–14 (4th ed.1992); *cf. Poulnot v. District of Columbia,* 608 A.2d 134, 141 (D.C.1992) (doctrine of judicial notice "is essentially an expression of common sense," a " 'judicial shortcut, a doing away ... with the formal necessity of evidence because there is no real necessity for it' " (citation omitted)). But this does not relieve the government of the burden of proving non-registration. The elements of UF are fixed; they are not fluid depending on the identity of the firearm possessed.

Appellant's reliance on *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63

---

**3.** This court's decisions follow the Supreme Court's merger analysis. *See, e.g., Byrd v. United States,* 598 A.2d 386, 389 (D.C.1991) (en banc); *see also* D.C.Code § 23–112 (1996) (embodying the *Blockburger* test).

**4.** The government also had to prove the operability of the machine gun to convict under PPW (a), *Washington v. United States,* 498 A.2d 247 (D.C. 1985), something UF does not require. *Townsend v. United States,* 559 A.2d 1319 (D.C.1989).

L.Ed.2d 715 (1980), does not help him. *Whalen* held that, for purposes of cumulative punishment under the Double Jeopardy Clause, the crime of felony murder subsumes and makes one of its elements commission of the underlying crime (there rape), which otherwise would not be the "same offense." *Id.* at 694, 100 S.Ct. at 1439. UF and PPW (a)-machine gun do not similarly become the same offense just because machine guns cannot be registered. The elements of UF remain the same and distinguish it from PPW (a) regardless of the type of firearm possessed. Nor does the principle that we construe "[e]ach provision of [a] statute ... so as to give effect to all of the statute's provisions," *District of Columbia v. Morrissey,* 668 A.2d 792, 798 (D.C.1995) (citation omitted), aid appellant. Section 6–2312(a), besides insuring that no registration will issue for the listed firearms, allows one means of proof to replace another in a UF prosecution, as explained above. We thus give full effect to the section without reading into it the much broader purpose of redefining UF in specific applications.

"[W]hen the legislature excluded machine guns from those firearms which could lawfully be registered, the legislature was 'concerned primarily with the inherent fire power of certain weapons....'" *United States v. Woodfolk,* 656 A.2d 1145, 1148 (D.C.1995) (footnote omitted) (quoting *Fesjian v. Jefferson,* 399 A.2d 861, 865 (D.C.1979)), *cert. denied,* —— U.S. ——, 116 S.Ct. 1286, 134 L.Ed.2d 231 (1996). · Barring their registration was part of the legislature's concern in Title 6 "to broaden and increase the limitations on firearms within the District." *Townsend,* 559 A.2d at 1321. It scarcely harmonizes with this concern to read § 6–2312(a) as removing possession of these lethal weapons from the reach of UF because it also violates another statute. UF simply "turn[s] the screw of the criminal machinery ... tighter," *Gore v. United States,* 357 U.S. 386, 390, 78 S.Ct. 1280, 1283, 2 L.Ed.2d 1405 (1958), on the possession of such weapons.

Furthermore, appellant's argument logically would have to include all of the firearms listed in § 6–2312(a), not just machine guns. These include any "[p]istol not validly registered to the current registrant in the District prior to September 24, 1976"[5]—which surely embraces most pistols now to be found in the District of Columbia. Appellant's position would mean that UF-pistol merges with the crime of carrying a pistol without a license (D.C.Code § 22–3204(a)) in cases where both are charged. But this court has rejected the argument that these crimes merge under *Blockburger,* in part because "the registration offense requires proof of non-registration which the license offense does not." *Tyree,* 629 A.2d at 23; *see also Irby v. United States,* 585 A.2d 759, 766 n. 11 (D.C.1991).

Though it is hardly necessary to say so, the logic of appellant's argument would extend still further. Section 6–2313 sets forth a variety of conditions other than the nature of the firearm that disable a person from registering a firearm. These include minority, previous conviction for a crime of violence or a weapons offense, recent drug convictions, recent acquittal by reason of insanity or recent involuntary commitment to a mental institution, and others. Under appellant's theory, if any of these conditions caused a defendant's firearm not to be registered, non-registration would cease to be an element of UF just as in the case of machine guns, and UF would merge with another offense prohibiting possession. *Blockburger* does not support this wholesale restriction on cumulative punishment for UF and related weapons offenses.

For these reasons, we hold that appellant's separate sentences for UF and PPW (a)-machine gun may stand.

### III.

Appellant contends that his sentence of one year in prison for possession of marijuana must be reversed because, after he committed the offense but before trial and sentencing, the Council of the District of Columbia reduced the maximum sentence for

---

**5.** The only exceptions pertain to weapons issued to special police officers and similar employees, and to retired Metropolitan police officers.

the offense to 180 days in prison. *See* D.C.Code § 33–541(d) (1993 & Supp.1996). He argues that he should receive the benefit of the law even though the legislative change he relies on is silent as to its intended effect on crimes committed before the effective date. Appellant's argument is foreclosed by our recent decision in *Holiday v. United States*, 683 A.2d 61 (D.C. 1996) (holding that statutory elimination of mandatory-minimum sentences for certain non-violent drug offenses is not applicable to offenses committed before the effective date of the repealing legislation, in light of the federal and District of Columbia "savings statutes").

### IV.

■ As the government concedes, the sentence recorded on the Judgment and Commitment Order differs from the sentence pronounced orally by the trial judge on January 5, 1995. As "[t]he sentence pronounced in open court constitutes the actual judgment of the court," *Davis v. United States*, 397 A.2d 951, 954 (D.C.1979),[6] the case must be remanded for the judge to issue a correct Judgment and Commitment Order in conformity with the oral pronouncement.

In all other respects, the judgments appealed from are

*Affirmed.*

MACK, Senior Judge, dissenting:

In scholarly fashion, my colleagues reject the appellant's argument that convictions for possession of an unregistered firearm and possession of a prohibited weapon merge. In that pedantically perfect commentary, however, two sentences surface which motivate this dissent. The first sentence is, "The gun convictions arose from *possession of a single firearm.*" Majority op. at 314 (emphasis added). The second sentence, Majority op.

---

6. "[T]he written Judgment and Commitment Order is intended only to memorialize the oral judgment." *David v. United States*, 579 A.2d 1172, 1175 (D.C.1990).

1. Contrary to earlier schools of thought, even concurrent sentences violate the prohibition against multiple punishments because of the potential collateral consequences that attach to criminal convictions. *See Rutledge, supra*, ——

at 314 (a direct quote from the recent Supreme Court decision of *Rutledge v. United States*, —— U.S. ——, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996)) is, "Courts may not prescrib[e] greater punishment than the legislature intended." The first sentence brings to mind the sage observation of Mr. Justice Douglas, "[A]nd common sense often makes good law." *Peak v. United States*, 353 U.S. 43, 46, 77 S.Ct. 613, 615, 1 L.Ed.2d 631 (1957). The second sentence makes us painfully aware that the majority, in a rush to embrace a *Blockburger* analysis (*i.e.*, "that each statute requires proof of a fact that the other does not"), has not adequately dealt with "the presumption against allowing multiple punishments for the same offense" (*Rutledge, supra*, —— U.S. at ——, 116 S.Ct. at 1248), or with the legislative intent of the City Council. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

### A. Background

In addition to barring successive prosecutions, the Double Jeopardy Clause of the Fifth Amendment protects individuals from multiple punishments for the same offense.[1] *See United States v. Dixon*, 509 U.S. 688, 694–96, 113 S.Ct. 2849, 2855, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969). Nevertheless, an individual may be convicted of more than one offense arising from a single transaction if this is consistent with the legislature's intent in enacting the respective statutes. *See Rutledge, supra*, —— U.S. at ——, 116 S.Ct. at 1245; *see also, e.g., United States v. Woodward*, 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985) (per curiam) (describing *Blockburger* as a rule for determining whether Congress intended to permit cumulative punishment). "While the government may charge a defen-

---

U.S. at ——, 116 S.Ct. at 1245; *Ball v. United States*, 470 U.S. 856, 864–65, 105 S.Ct. 1668, 1673–74, 84 L.Ed.2d 740 (1985); *Byrd v. United States*, 598 A.2d 386, 393 (D.C.1991) (en banc); *Robinson v. United States*, 501 A.2d 1273, 1277 (D.C.1985); *Doepel v. United States*, 434 A.2d 449, 459 (D.C.), *cert. denied*, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981).

dant with both a greater and a lesser included offense and may prosecute those offenses at a single trial, the court *may not* enter separate convictions or impose cumulative punishments for both offenses unless the legislature has authorized such punishment." *United States v. Freyre–Lazaro*, 3 F.3d 1496, 1507 (11th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1385, 128 L.Ed.2d 59 (1994) (citing *United States v. Kaiser*, 893 F.2d 1300, 1303 (11th Cir.1990)) (emphasis added).

In view of the government's assertion that appellant's analysis converts the comparison of the PPW and UF prohibitions into a "fact-based inquiry" rather than an "elements" one, I think it instructive to allude briefly to earlier cases and the evolution of present-day concepts.

In November 1931, the Supreme Court of the United States heard oral argument raising, *inter alia*, the issue of whether an accused (who had torn open mail bags, removed quantities of morphine hydrochloride, and made a single sale to a purchaser) could be convicted under both of two sections of the Harrison Narcotic Act of 1914 [2] of selling drugs that were neither transferred (1) in the original stamped package, or (2) in pursuance of a written order. *Blockburger, supra*, 284 U.S. at 301, 52 S.Ct. at 181. A little more than a month later, Mr. Justice Sutherland (writing for a unanimous court in affirming the convictions) announced:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger, supra*, 284 U.S. at 304, 52 S.Ct. at 182 (citing *Gavieres v. United States*, 220

U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911)).

In March 1985, Chief Justice Burger, writing for a unanimous court, held that, while a convicted felon could be charged under two criminal statutes with receiving and possessing the same firearm, he could not be convicted and punished for the two offenses. *Ball, supra* note 1, 470 U.S. at 861, 105 S.Ct. at 1671–72. *Ball* told us that "[t]he assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes," *id.*, and that "Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had no intention of subjecting that person to two convictions for the same criminal act." *Id.* at 862, 105 S.Ct. at 1672.

Only recently, in March of this year, Mr. Justice Stevens, speaking for another unanimous court, reminded us of the *presumption* that "where two statutory provisions prescribe the 'same offense,' a legislature does not intend to impose two punishments for that offense." [3] *Rutledge, supra*, —— U.S. at ——, 116 S.Ct. at 1245 (citations omitted). In rejecting the government's repeated argument that a charge of participation in a conspiracy, and a charge of continuing a criminal enterprise "in concert" with others, would support conviction and punishment on both counts, Mr. Justice Stevens stated that a straightforward application of the *Blockburger* test led to the conclusion that conspiracy as defined in one count did not define a different offense from the continuing criminal enterprise "in concert" definition in the other count, and, since the latter offense was the more serious of the two, it was "appropriate" to characterize conspiracy as a lesser included offense of the continuing criminal enterprise (thus prohibiting dual punishment). *Rutledge, supra*, —— U.S. at ——, 116 S.Ct. at 1247.[4]

---

**2.** Then codified as 26 U.S.C.A. §§ 692, 696. Now incorporated in the Food and Drug Act, 21 U.S.C.A. §§ 802 *et seq.*

**3.** I would reject the government's position in reliance on *Crawford v. United States*, 628 A.2d 1002, 1003 (D.C.1993), that D.C.Code § 23–112 establishes a statutory presumption that favors consecutive sentences. That code provision does

little more than codify the holding of *Blockburger. See Byrd, supra*, 598 A.2d at 387.

**4.** In clarifying the proper application of this "elements" analysis, Justice Stevens further stated:
> For over half a century we have determined whether a defendant has been punished twice for the "same offense" by applying the rule set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306

In my view, these landmark decisions by the Supreme Court (as well as our reasoning in the en banc decision of *Byrd, supra*) support the conclusion in the instant case that, whether we look strictly to legislative intent or to a straightforward *Blockburger* analysis, appellant's convictions and sentences on both possession of a prohibited weapon and possession of an unregistered firearm are in violation of the Double Jeopardy Clause.[5]

## B. Discussion

### 1. Legislative Intent

The question of whether the legislature intended for both PPW and UF convictions to ensue from a single act is determined by examining the plain meaning of the applicable language and the legislative history supporting each statute's enactment. In my view, the language alone suggests that the two statutes necessarily share the same meaning, *see Ball, supra*, 470 U.S. at 861–63, 105 S.Ct. at 1671–73, and are the "functional equivalent" of each other, *see Byrd, supra*, 598 A.2d at 391. Thus, they could not have been intended to apply mutually to a single act.

To be convicted of PPW, an accused must knowingly and intentionally possess one of the enumerated prohibited weapons or some other object that fits the statutory definition of a prohibited weapon. *See United States v. Woodfolk*, 656 A.2d 1145, 1149 (D.C.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1286,

134 L.Ed.2d 231 (1996). These weapons include an operable machine gun. *Id.* at 1149 nn. 8 & 10; *Washington v. United States*, 498 A.2d 247, 249 (D.C.1985) (citing *Curtice v. United States*, 488 A.2d 917 (D.C.1985)). To be convicted of UF, an accused must knowingly and intentionally possess an unregistered firearm. A machine gun, by law, cannot be registered. D.C.Code § 6–2312(a).

The language of the statutory provisions suggests the singular. In both instances, the crime is one of "possession" of a prohibited weapon. Moreover, the terms "prohibited weapon" and "unregistered firearm" suggest singularity. Possession of a machine gun is prohibited both under the PPW and UF statutes. PPW prohibits the *possession* of all operable firearms or destructive devices. Similarly, UF, in light of the outright prohibition of certain firearms pursuant to D.C.Code § 6–2312, bars the *possession* of "any destructive device" or firearm unless it is registered. Therefore, UF, notwithstanding its title, is a statute essentially prohibiting *possession* by the general population; because registration is required (and permissible) only in the few specified exceptions not relevant to our inquiry here,[6] both statutes essentially prohibit the same thing—possession of a firearm or destructive device by the general population.

Legislative history, as interpreted through case law, further establishes the identity of purpose with respect to the PPW and UF statutes. PPW, which is coded as a part of

(1932).... *In subsequent applications of the test, we have often concluded that two different statutes define the "same offense," typically because one is a lesser included offense of the other.*
*Rutledge, supra,* —— U.S. at ——, 116 S.Ct. at 1245 (emphasis added).

**5.** *See also Rutledge, supra,* —— U.S. at —— n. 6, 116 S.Ct. at 1245 n. 6. (citing, *e.g., Ball, supra,* 470 U.S. at 861–64, 105 S.Ct. at 1671–73) ("multiple prosecutions were barred because statutes directed at 'receipt' and 'possession' of a firearm amounted to the 'same offense,' in that proof of receipt 'necessarily' included proof of possession"); *Whalen v. United States*, 445 U.S. 684, 691–95, 100 S.Ct. 1432, 1437–40, 63 L.Ed.2d 715 (1980) ("two punishments could not be imposed because rape and felony murder predicated on the rape were the 'same offense'"); *Brown v.*

*Ohio*, 432 U.S. 161, 167–68, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977) (*Blockburger* application confirmed that "offense of 'joyriding' was a lesser included offense of auto theft" (parenthetical omitted)).

**6.** Only qualified organizations or retired police officer(s) are eligible to receive a registration certificate, D.C.Code § 6–2311(a)(1)-(2). Also, (1) certain law enforcement officers, (2) individuals holding a dealer's license, or (3) nonresidents participating in lawful recreational activities, may *possess* unregistered weapons that would otherwise require a registration certificate to be legally *possessed*. D.C.Code § 6–2311(b)(1)-(3) (emphasis added). The following section (D.C.Code § 6–2312) simply serves to require registration by these excluded groups that would otherwise be permitted under D.C.Code § 6–2311 to *possess* those weapons.

Title 22 (The Firearms Control Act of 1932), was enacted by Congress to enforce a prohibition against carrying particularly dangerous weapons within the District of Columbia and was intended to "strengthen the existing law and tighten controls over the *possession* of dangerous weapons." *Woodfolk, supra,* 656 A.2d at 1148 (emphasis added); *see Townsend v. United States,* 559 A.2d 1319, 1321 (D.C.1989). The Firearms Control Regulations Act was enacted 43 years later by the District of Columbia City Council primarily to *"broaden and increase* the limitations on firearms within the District *above and beyond the existing criminal code provisions* contained in Title 22." *Townsend, supra,* 559 A.2d at 1321 (emphasis added); D.C.Code § 6–2301.

The UF statute, enacted as a part of the latter supplemental legislation, addresses the City Council's concern over the dangerous increase in the number and use of guns in the District,[7] *Kuhn v. Cissel,* 409 A.2d 182, 186 (D.C.1979), by tracking the ownership of those weapons that are generally restricted to the isolated class deemed to have a legitimate use for such,[8] which includes those weapons prohibited by D.C.Code § 22–3214 (*i.e., registerable* firearms). The prohibition against issuing registration certificates for machine guns is similarly part of the Firearms Control Regulation Act and was enacted to prohibit residents of the District from *possessing* guns with a fire power deemed dangerous by the legislature. *Woodfolk, supra,* 656 A.2d at 1148 (citing *Fesjian v. Jefferson,* 399 A.2d 861, 865 (D.C.1979)).

Legislative descriptions of the purposes of the PPW and UF statutes, as well as the added absolute ban on machine guns, *inter alia,* are instructive. The term "possess" is common to all of these statutes, with the

ultimate goal of each being to limit, prohibit, and control the possession of firearms in the District of Columbia. Thus, the UF statute can appropriately be considered an extension of the PPW statute in that it is one of a handful of subsections enacted to tighten the control over dangerous weapons in the District of Columbia, particularly those previously deemed "prohibited weapons," *see* D.C.Code §§ 22–3201 *et seq.* This conclusion is further evidenced by the Council's report regarding the enactment of the Firearms Control Regulations Act, where it referred to multiple statutes as *"a D.C. statute that re-* quired registration of all firearms within the District, outlawed possession of unregistered firearms, and specifically stated that registration certificates could not be issued for machine guns," *Woodfolk, supra,* 656 A.2d at 1148 & n. 6 (emphasis added), as well as referring collectively to D.C.Code §§ 6–2311 *et seq.* as one violation. *See* Council of the District of Columbia, Committee on the Judiciary, Report on Bill No. 1–164, The Firearms Control Act of 1975 at 21, 30.

I would conclude that because the legislative history surrounding the enactment of the PPW and UF prohibitions is the same (*i.e.,* to limit the possession of firearms in the District) as is the plain meaning of the language of the statutes, it is inconsistent with the intent of the legislature to convict and sentence an individual found in possession of a single machine gun under *both* PPW and UF.[9] The relationship between PPW and UF (taking into account D.C.Code § 6–2312) is "so intimate and intertwined" when applied to a single criminal act that if UF is not otherwise considered a lesser included offense of PPW (as it may well be pursuant to *Rutledge* ), it is certainly its "functional equivalent." *See Byrd, supra,* 598 A.2d at

---

**7.** *See* D.C.Code § 6–1875 (the predecessor to the current UF statute, D.C.Code § 6–2311).

**8.** D.C.Code § 6–2301. As set forth therein, the purpose of the Firearms Control Regulation Act is to:
  (1) Require the registration of all firearms that are owned by private citizens;
  (2) Limit the types of weapons persons may lawfully possess;
  (3) Assure that only qualified persons are allowed to possess firearms;

  (4) Regulate deadly weapons dealers; and
  (5) Make it more difficult for firearms, destructive devices, and ammunition to move in illicit commerce within the District of Columbia.

**9.** I note that there are many cases where the elements of both PPW and UF could be proved from the facts involved, yet rarely are both statutes in fact charged. *See, e.g., Wilson v. United States,* 590 A.2d 1002 (D.C.1991).

391. Moreover, as in *Ball, supra*, it defies reality to conclude that the legislature did intend to punish the same criminal possession under two different statutes.

### 2. Elements Comparison

Consistent with our approach in *Byrd*, where we held that the legislature did not intend an individual to be convicted of and sentenced for violations of both receiving stolen property and theft when each arose from the same criminal act, but nevertheless examined *Blockburger, Byrd, supra*, 598 A.2d at 390–91, I turn to address the "boiler-plate litany" of *Blockburger, i.e.*, the test of whether each provision requires "proof" of an additional fact the other does not. Applying that test as well, I would reach the same result.

The logic of *Blockburger* has withstood the test of time. Not only has it resolved difficult questions arising in myriad cases and varying factual circumstances, but it has also made accommodations where there are indicia of legislative intent. *See Woodward, supra*, 469 U.S. at 108, 105 S.Ct. at 612. Thus, this has been true where two offenses are "intimate and intertwined" in "the same act or course of conduct" (*Byrd, supra*, 598 A.2d at 391), where "one [offense] is a lesser included offense of the other" (*see Rutledge, supra*, —— U.S. at ——, 116 S.Ct. at 1245), or where due process rights are at issue (*see United States v. Dalton*, 960 F.2d 121 (10th Cir.1992)).[10]

It is important to remember that what has been characterized as the "elements-comparison" of *Blockburger* arose not only in the context of a single sale made to a purchaser, but of separate violations requiring the government to *prove* the elements of distinct statutes—*i.e.*, prohibitions against the (1) *lifting* of a narcotic drug from its original pack-

ing, and (2) *transferring* that drug without the existence of a purchase order. Each statute *required proof* of a fact which the other did not. *See Blockburger, supra*, 284 U.S. at 301–02, 52 S.Ct. at 181.

In the instant case, we have no such requirement. Once the government proved the possession of a machine gun, prohibited under the two statutory provisions, no further proof was needed. Since a machine gun cannot be registered as a matter of law, no proof of nonregistration was required. My colleagues concede that the government is relieved of having to introduce a certificate of nonregistration. Presumably the court, with or without a request from counsel, could take judicial notice of the fact that a machine gun is unregisterable. *See* 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 335, at 413–14 (4th ed.1992). In any event, because only one of the elements of PPW is necessary to establish a violation of the UF statute, it is "appropriate" to characterize UF as a lesser included offense of PPW. *Cf. Rutledge, supra*, —— U.S. at ——, 116 S.Ct. at 1250.

I would hold that conviction and sentencing for the same act of possession is barred by the Double Jeopardy provision of the Constitution. I respectfully dissent.[11]

---

**10.** In *Dalton*, the Tenth Circuit Court of Appeals found that appellant's due process rights were violated when he was convicted of possessing and transferring an unregistered machine gun, because appellant "was convicted of a crime he could not perform" (another statute made machine guns unregisterable). *Dalton, supra*, 960 F.2d at 124.

On remand to the District Court, which vacated appellant's conviction, the government then charged appellant with possession and transfer of a machine gun. *United States v. Dalton*, 795 F.Supp. 353, 354 (1992). Subsequent to a *Blockburger* analysis, the District Court found that this charge (which is essentially the same as our PPW statute) was the same offense as possession and transfer of an unregistered firearm (which is essentially the same as our UF statute). *Id.* at 354–55. Thus, prosecutions for both were barred by double jeopardy. *Id.*

**11.** As to the other issues, I join my colleagues in affirmance.