747 A.2d 1182 (2000)
In re D.S., Appellant.
No. 96-FS-1934.
District of Columbia Court of Appeals.
Argued October 6, 1999.
Decided March 23, 2000.
*1184 Ernest C. Baynard, III, McLean, VA, appointed by the court, for appellant.
Sidney R. Bixler, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Robert R. Rigsby, Deputy Corporation Counsel, and Rosalyn Calbert Groce, Director, Policy and Appeals Branch, were on the brief, for appellee.
Before STEADMAN, GLICKMAN, and WASHINGTON, Associate Judges.
WASHINGTON, Associate Judge:
Appellant D.S., a juvenile, was found guilty of possession of a prohibited weapon, a sawed-off shotgun, in violation of D.C.Code § 22-3214(a) (1996) and possession of an unregistered firearm in violation of D.C.Code § 6-2311(a) (1995). D.S. appeals his adjudication of delinquency on several grounds. D.S. claims that the trial court erred in (1) denying his motions for judgment of acquittal on the count of possession of a prohibited weapon; (2) allowing hearsay testimony to provide the only basis for finding beyond a reasonable doubt that the shotgun barrel was less than twenty inches long; (3) finding D.S. guilty of possession of a prohibited weapon where there existed a lack of foundation as to the police officer's knowledge that the weapon introduced into evidence was the gun allegedly seized from D.S.; and (4) denying D.S.'s motions for judgment of acquittal on the possession of an unregistered firearm count. Finally, D.S. appeals the trial court's finding of guilt on the ground that D.C.Code § 22-3214(a) is unconstitutionally vague on its face.[1] We affirm.

I.
On July 4, 1996, Officers Melvin Key and Anthony Mable received a call to investigate reports of gunshots in the vicinity of 14th and U Streets, S.E. in the District of Columbia. Officer Key testified that he observed D.S. riding his bicycle out of an alley with what appeared to be the butt of a weapon protruding from the waistband of his trousers. Officer Key approached D.S. and seized the weapon from him. Officer Mable confirmed that he saw Officer Key walk up to D.S. and pull the shotgun from D.S.'s waistband. Officer Key further testified that after placing D.S. under arrest, D.S. made several spontaneous statements without any questioning from the officers. According to Officer Key, D.S. stated that he was not shooting any gun and that he had found the gun in the alley after somebody had left it there. D.S. was arrested and charged with possession of a prohibited *1185 weapon and possession of an unregistered firearm.
Officers Key and Mable brought D.S. to the Seventh District station house. Sergeant Brady Johnson testified that after D.S. was booked, he was advised of his Miranda rights and voluntarily waived them. According to Sergeant Johnson, D.S. told him that he saw two men firing the shotgun in the alley and subsequently putting it down in a neighbor's yard. After the two men left, D.S. picked up the gun and took it away. The interrogation lasted approximately twenty minutes.
On August 8, 1996 and August 12, 1996, a factfinding hearing was held. D.S. moved for a judgment of acquittal at the close of the government's case and renewed this motion at the close of all the evidence. Both of his motions were denied. At the conclusion of the hearing, the trial court found D.S. guilty of both possession of a prohibited weapon and possession of an unregistered firearm. D.S. filed this timely appeal.

II.
D.S. contends that the trial court erred in denying his motions for judgment of acquittal with respect to the possession of a prohibited weapon count, because the government failed to prove that he knew that the shotgun he possessed had characteristics that made it illegal. In reviewing a denial of a motion for judgment of acquittal, this court must "view the evidence in the light most favorable to the government, giving deference to the fact finder's right to weigh the evidence, determine the credibility of the witnesses, and draw inferences from the evidence presented. We can only reverse a conviction on this ground if there is no evidence upon which a reasonable mind could infer guilt beyond a reasonable doubt." Patton v. United States, 633 A.2d 800, 820 (D.C.1993).
D.C.Code § 22-3214 prohibits the possession of certain dangerous weapons. D.C.Code § 22-3214(a) states in relevant part that "[n]o person shall within the District of Columbia possess any ... sawed-off shotgun...." D.C.Code § 22-3201(b) (1996) defines "sawed-off shotgun" as "any shotgun with a barrel less than 20 inches in length." The elements of the offense of possession of a prohibited weapon in violation of D.C.Code § 22-3214(a) are: "(1) [t]hat the defendant possessed a... sawed-off shotgun; and (2) [t]hat he did so knowingly and intentionally." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.72 (4th ed.1993). "Knowingly and intentionally" is further defined as meaning "consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently." Id.
D.S. argues that the trial court erred in holding that the government had proven beyond a reasonable doubt that he knowingly and intentionally possessed a sawed-off shotgun because the government failed to produce any evidence that he knew that the weapon he possessed was, in fact, a sawed-off shotgun. In support of this argument, D.S. relies on the Supreme Court's decision in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). In Staples, the Court considered the mens rea requirement of the National Firearms Act, 26 U.S.C. § 5861(d) (1994) ("Act"). The Court held that in order to be convicted under the Act of possession of an unregistered firearm, the government must prove that the accused knew the weapon that he or she possessed had the physical characteristics that brought it within the scope of the Act. Staples, 511 U.S. at 619, 114 S.Ct. 1793. D.S., therefore, contends that the government in this case must prove that he knew that the barrel of the weapon in his possession was less than twenty inches long in order to be convicted of possession of a sawed-off shotgun. D.S.'s reliance on Staples, however, is misplaced.
Staples involved a semi-automatic rifle, for which registration under the Act is not normally required. The rifle, however, had been modified for fully automatic fire, *1186 a modification which did trigger the registration requirement of the Act. Id. at 603, 114 S.Ct. 1793. Because the modification was accomplished without visible, external signs of tampering and the defendant maintained that he was unaware that the rifle had been so modified, the Court held that the government is required to prove that a defendant knows of the features of the weapon that bring it within the scope of the Act. Id. at 619, 114 S.Ct. 1793.
In this case, unlike in Staples, the characteristics or features which made the sawed-off shotgun subject to D.C.Code § 22-3214(a) were visible to anyone looking at the weapon. In other words, the weapon in this case was just what it purported to be, a shotgun with a barrel length of less than twenty inches. Because the characteristics of the weapon in D.S.'s possession which brought it within the parameters of the statute were plain and obvious on its face, the government was not required to prove that D.S. knew that the weapon in his possession was prohibited. The Court in Staples specifically recognized this distinction when it stated "we might surely classify certain categories of gunsno doubt including [] machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulationas items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in Freed."[2]Id. at 611-12, 91 S.Ct. 1112 (emphasis added). Following this rationale, the Eighth Circuit Court of Appeals in United States v. Barr, 32 F.3d 1320, 1324 (8th Cir.1994), observed, "[w]here, as here, the characteristics of the weapon itself render it `quasi-suspect,' Staples does not require proof that the defendant knew of the specific characteristics which make the weapon subject to the Act. The [g]overnment need only prove that the defendant possessed the `quasi-suspect' weapon and observed its characteristics." The elements of the offense of possession of a prohibited weapon required the trial court to find that D.S. possessed the sawed-off shotgun and that he observed it, thus possessing it "consciously, voluntarily, and on purpose, not mistakenly, accidentally or inadvertently." CRIMINAL JURY INSTRUCTIONS, supra. The evidence in this case certainly supports such a finding.
In addition, the legislative history of D.C.Code § 22-3214(a) indicates that Congress intended to create a general intent crime, such that the mere possession of certain enumerated weapons is unlawful. See McBride v. United States, 441 A.2d 644, 660 n. 7 (D.C.1982); Worthy v. United States, 420 A.2d 1216, 1218 (1980); United States v. Brooks, 330 A.2d 245, 247 (D.C. 1974). As stated before, D.C.Code § 22-3214(a) specifically forbids the possession of sawed-off shotguns, except in the case of certain military and law enforcement personnel. See Worthy, 420 A.2d at 1218. This court noted that Congress enacted this provision to "enforce drastically a prohibition against carrying particular dangerous weapons within the District of Columbia." Id. The legislative intent was to "strengthen the existing law and tighten controls over the possession of dangerous weapons." United States v. Parker, 185 A.2d 913, 914 (D.C.1962). We also stated that those weapons listed in D.C.Code § 22-3214(a), including sawed-off shotguns, are "so highly suspect and devoid of lawful use that their mere possession is forbidden." Brooks, 330 A.2d at 247. Therefore, in order to convict D.S. of possession of a prohibited weapon under D.C.Code § 22-3214(a), it was certainly sufficient for the government to demonstrate, as it did here, that D.S. knowingly and intentionally possessed a shotgun and that that shotgun's barrel in fact was less than twenty inches in length. See McDaniels v. United States, 718 A.2d 530, 531 (D.C.1998); Turner v. United States, 684 A.2d 313, 315 (D.C.1996); United States v. Woodfolk, 656 A.2d 1145, 1148 (D.C.1995).
*1187 The trial court found that D.S. knowingly and intentionally possessed a sawed-off shotgun. D.S. admitted that he possessed the gun. There was also evidence that the barrel of the weapon was less than twenty inches and that the gun was operable. Therefore, viewing the evidence in the light most favorable to the government, the trial court did not err in denying D.S.'s motions for judgment of acquittal.
D.S. also argues that the trial court erred in allowing him to be adjudicated delinquent on the basis of hearsay testimony regarding the length of the shotgun barrel and its operability. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Carter v. United States, 614 A.2d 542, 545 n. 9 (D.C. 1992). There is no hearsay here. Officer Mable testified that he was present when the gun taken from D.S. was test-fired and found to be operable and when the barrel was measured and found to be less than twenty inches. There is no out of court statement or out of court declarant in Officer Mable's testimony. Officer Mable's testimony is based on his perception of the events. Therefore, no hearsay exists, and there was no error.
D.S. further contends that the trial court erred in finding him guilty because there was no evidence that the weapon test fired, measured, or admitted into evidence was the one allegedly seized from him. Because D.S. failed to object to the admission of the weapon into evidence at trial, we must review his claim under a plain error standard. When this court reviews for plain error, it will reverse a trial court's decision only when the error is "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." Watts v. United States, 362 A.2d 706, 709 (D.C.1976) (en banc).
D.S. specifically argues that the government failed to demonstrate that the shotgun admitted into evidence was the one taken from him. A chain of custody for real evidence must be established if: (1) the item is not readily identifiable; (2) the item is readily identifiable but the witness neglected to note the characteristics that make the item readily identifiable; or (3) the item is susceptible to alteration by tampering or contamination. See FEDERAL EVIDENCE PRACTICE GUIDE § 2.10 (Matthew Bender & Co.1997). One way that chain of custody can be shown is by having the police officer initial the evidence. See Turney v. United States, 626 A.2d 872, 873 (D.C.1993). We further noted that evidence of a break in the chain of custody affects only the weight to be given to that evidence by the factfinder. See id. at 874.
In this case, Officer Key testified that the weapon admitted into evidence at trial was the weapon that they recovered from D.S. the night he was placed under arrest. Office Mable likewise identified the weapon as the one Officer Key had taken from D.S. Officer Mable further testified that he had scratched his initials onto the gun and placed it in a locker at the Seventh District station house. D.S. argues that there is a break in the chain of custody because it is unclear when Officer Mable's initials were scratched onto the gun. Even assuming this to be true, as stated above, evidence of a break in the chain of custody only affects the weight to be given to the evidence. This court has stated that when physical evidence is in the hands of government, the presumption arises that it has been handled properly. See Ford v. United States, 396 A.2d 191, 194-95 (D.C.1978). We also noted that once the government has established an "unbroken chain of custody as a matter of reasonable probability," defendant must present evidence of tampering. See Rosser v. United States, 313 A.2d 876, 880 (D.C.1974). Therefore, it was up to D.S. to rebut the presumption *1188 at the close of the government's case in chief that the weapon admitted into evidence was not the weapon taken from him. See Turney, 626 A.2d at 874. Because D.S. failed to rebut this presumption, we cannot say that the admission of the weapon into evidence was "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." Watts, 362 A.2d at 709. Therefore, we find no error.
With respect to the argument put forth by D.S. that the trial court erred in denying his motions for judgment of acquittal on the possession of an unregistered firearm count, the evidence presented at trial was a certificate under seal indicating that there was no registration held by D.S. for a twenty gauge shotgun. D.S. contends that the trial court's reliance on this evidence was erroneous because there was no evidence that the gun was indeed a twenty gauge shotgun. However, D.S. never objected to the certificate at trial. Furthermore, D.S. would not have been able to obtain a registration for the weapon because of his age and the fact that it was an unregisterable weapon under D.C.Code § 6-2312(a). This court stated in Turner, 684 A.2d at 315, that because such a weapon cannot be registered, "it relieves the government of having to prove non-registration by the usual means, i.e., a certificate of non-registration." We further commented that the government "presumably may ask the trial court to take judicial notice of D.C.Code § 6-2312(a)'s ban and rest on that proof of non-registration." Id. We cautioned, however, that this does not relieve the government of the burden of proving non-registration. See id. Therefore, even if there was no evidence presented at trial that the weapon was a twenty gauge shotgun, there was evidence that the gun was a sawed-off shotgun, unable to be registered under D.C.Code § 6-2312(a), and thus the error was harmless. In the alternative, D.S. argues that he did not have time to register the weapon since he was arrested soon after he came into possession of the gun. Because D.S. presented no evidence that his possession of the weapon was merely to turn it over to the police, we cannot conclude that the court committed any error.
Finally, D.S. argues that the D.C.Code § 22-3214(a) is unconstitutionally vague in that it allows police officers to determine the legal definition of "barrel." This court stated in Scott v. United States, 243 A.2d 54 (D.C.1968), that a criminal statute violates due process of law "where the acts forbidden are so vague that a person of ordinary intelligence could not reasonably understand that his contemplated conduct is proscribed." The term "barrel" is defined in Webster's New Collegiate Dictionary as "the discharging tube of a gun." Id. at 90 (1981). We cannot conclude that a person of ordinary intelligence could not reasonably understand what "barrel" meant within the meaning of D.C.Code § 22-3214(a) and that possession of a shotgun with a barrel less than twenty inches is prohibited. Therefore, the statute is not void for vagueness.
Accordingly, the judgment of the trial court is hereby
Affirmed.
NOTES
[1] D.S. also contends that the trial court erred in admitting evidence of his alleged statement to the police because the government failed to satisfy its burden of proving compliance with Miranda. However, because D.S. failed to move to suppress the statement and made no objection as to its admissibility at trial, he waived this issue and cannot now raise it on appeal. See Streater v. United States, 478 A.2d 1055, 1058 (D.C.1984); Baker v. United States, 324 A.2d 194, 199 (D.C.1974).
[2] United States v. Freed, 401 U.S. 601, 607-610, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971).